OPINION *Page 2 
{¶ 1} Defendant-appellant, Kevin E. Gillman (hereinafter "Gillman"), appeals the Union County Court of Common Pleas judgment of conviction. We affirm.
 {¶ 2} On May 21, 2007, the Union County Grand Jury indicted Gillman on one count of theft in violation of R.C. 2913.02(A)(1), (B)(2), a fifth degree felony, and one count of receiving stolen property in violation of R.C. 2913.51(A), (C), a fifth degree felony. On July 16, 2007, Gillman was arraigned, entered a plea of not guilty to each count of the indictment, and requested counsel.
 {¶ 3} On October 5, 2007, a jury trial was held wherein the following facts were revealed: Gillman and his sister, Marsha L. Siebeneck (hereinafter "Siebeneck"), went to the Marysville Wal-Mart on September 28, 2006. (Oct. 5, 2007 Tr. at 45, 58-59). Gillman entered the store at the general merchandise entrance, and Siebeneck entered at the grocery entrance. (Id). Siebeneck obtained a shopping cart and met Gillman in the store. The two went to the store's electronics aisle. (Id. at 50-51). While in the electronics aisle, Gillman began looking at model laptop computers and the glass display case where the actual laptops were stored. (Id. at 24, 52); (State's Ex. 1). Gillman moved the shopping cart in front of the display case, knelt down, and began attempts to open the case door. (Id. at 52); (State's Ex. 1). *Page 3 
 {¶ 4} Gillman and Siebeneck then left the electronics aisle and went to the plastic storage container aisle whereupon they examined several containers and selected a yellow Rubbermaid tote with a silver/gray storage lid. (Id. at 53); (State's Ex. 1). They placed the tote in their shopping cart and returned to the electronics aisle. (Id. at 53-54). Gillman, again, placed the shopping cart in front of the glass laptop case. (State's Ex. 1). They left the cart in the aisle and went to get a second shopping cart. (Id.).
 {¶ 5} The two returned to the electronics aisle with a second shopping cart with merchandise in the basket. (Id. at 54); (State's Ex. 1). Gilman placed this cart on the other side of the laptop case, leaving enough room for him to squeeze between the two carts and access the case while concealed. (Id.); (Id). Gillman knelt in front of the case and removed the glass door from the track of the display case. (Id.); (Id.). Gillman placed the glass door against the display cabinet, and he and Siebeneck left the aisle. (Id.); (Id.).
 {¶ 6} After the two left, Jack Carpenter, a Wal-Mart employee working in the electronics department, observed the unattended shopping carts and took them to the store's main aisle. (State's Ex. 1); (Oct. 5, 2007 Tr. at 34). Gillman and Siebeneck returned to the electronics aisle with the shopping cart containing the Rubbermaid tote. (State's Ex. 1). Gillman placed the cart in front of the laptop case, removed the glass doors, and placed five laptop computers into the tote. (Oct. 5, 2007 Tr. at 54-55). The two then left the aisle. (State's Ex. 1). *Page 4 
 {¶ 7} The couple returned to the plastic storage container aisle and placed some of the laptop computer boxes on the shelf where the Rubbermaid storage containers were located. (Id. at 55); (State's Ex. 1). The two then went to the cash register with a box purporting to contain an unassembled chair and some pink hangers, purchased these items, and left the store. (Id. at 56); (State's Ex. 1).
 {¶ 8} After Gillman and Siebeneck left the store, Wal-Mart employees discovered four empty laptop boxes throughout the store. (Id. at 46). The employees also discovered an unassembled chair inside the same Rubbermaid tote Gillman and Siebeneck used to conceal the laptops. (Id at 62). The tote containing the disassembled chair was located with the empty laptop boxes. (Id. at 62-63). A Wal-Mart employee then notified the police.
 {¶ 9} Officers from the Marysville Police Department responded to the scene. Detective Chad Seeburg processed the scene taking photographs of the laptop case, the empty laptop boxes, and the Rubbermaid tote with the unassembled chair inside. (Id. at 74-80). Detective Seeburg also processed the glass laptop display case doors for fingerprints. (Id. at 80-81). Several prints were sent to the Bureau of Criminal Identification and Investigation ("BCI"), whereupon it was discovered that five different sets of the latent prints belonged to Gillman. (Id. at 99-100). Gillman was subsequently arrested.
 {¶ 10} Following the State's case-in-chief, the defense rested without presenting any testimony. The jury returned guilty verdicts on both charges. The *Page 5 
trial court sentenced Gillman to twelve months imprisonment on the felony theft charge but continued sentencing for purposes of the receiving stolen property charge "for the reason that a determination must be made as to whether the two charges are of similar import * * *." (Oct. 9, 2007 JE).
 {¶ 11} On October 9, 2007 the trial court entered its journal entry of sentence as to the theft charge. Thereafter, Gillman appealed his conviction to this Court in case no. 14-07-39, but we dismissed the appeal for lack of a final appealable order.
 {¶ 12} On December 27, 2007, the trial court filed a journal entry finding that the receiving stolen property charge was an allied offense of similar import; and thus, Gillman could not be sentenced to additional time. On January 11, 2008, Gillman filed this present appeal as to the trial court's October 9th and December 27th entries.
 {¶ 13} Gillman now appeals asserting one assignment of error for review.
 ASSIGNMENT OF ERROR THE JURY'S VERDICTS ON THE FELONY THEFT AND RECEIVING STOLEN PROPERTY COUNTS ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND THE CONVICTIONS SHOULD BE REVERSED.
 {¶ 14} In his sole assignment of error, Gillman argues that the jury had insufficient evidence to find him guilty of the charges because the State's "case is really all circumstantial." (Appellant's Brief at 4). The State, on the other hand, *Page 6 
argues that it presented both direct and circumstantial evidence sufficient to sustain the conviction. We agree with the State.
 {¶ 15} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1981), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
 {¶ 16} Gillman was convicted on one count of theft and one count of receiving stolen property. Theft is codified in R.C. 2913.02(A)(1), which provides, in pertinent part:
 (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 (1) Without the consent of the owner or person authorized to give consent;
Receiving stolen property is codified in R.C. 2913.51, which provides, in pertinent part:
 (A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense. *Page 7 
 {¶ 17} Gillman's argument lacks merit both factually and legally. Factually, the State presented both direct and circumstantial evidence in this case. Legally, circumstantial evidence and direct evidence have the same probative value. Jenks, 61 Ohio St.3d at 272. In fact, "`* * * [circumstantial evidence * * * may also be more certain, satisfying, and persuasive than direct evidence.' * * *" Id., citing State v. Lott
(1990), 51 Ohio St.3d 160, 167, 555 N.E.2d 293.
 {¶ 18} The direct evidence against Gillman included photographs of him: prying open the laptop display case; taking the laptops out of the display case; placing the laptops into the Rubbermaid tote; and walking away with laptops concealed in the Rubbermaid tote in his shopping cart. (State's Exs. 15-20). The direct evidence also included video clips from Wal-Mart surveillance cameras. (State's Ex. 1). These video clips show Gillman entering Wal-Mart and accompanying Siebeneck to the electronics aisle. (Id.). While in the electronics aisle, the video clips show Gillman prying and pulling on the laptop display case doors. (Id.). The video clips also show Gillman return to the electronics aisle with a yellow Rubbermaid tote with a silver lid, take several laptops from the display case, and place them inside the tote. (Id.). After taking the laptops, the video clips show that Gillman returned to the plastic storage container aisle and stash several of the empty laptop boxes on the shelves. (Id.). Thereafter, the video clips show *Page 8 
Gillman and Siebeneck purchasing the unassembled chair box and pink hangers and then leaving Wal-Mart. (Id.).
 {¶ 19} The State also presented direct evidence through fingerprinting. Marysville Police Department Detective Seeberg testified that he processed the laptop display case glass for fingerprints and was able to obtain eleven latent fingerprints, seven of which came from the interior side of the glass. (Oct. 5, 2007 Tr. at 80, 82). Detective Seeberg sent the prints to BCI for analysis, and twelve identifications were made to Gillman. (Id. at 82, 85). Ms. Roggenbeck, a BCI latent print forensic scientist, compared the fingerprint lifts processed by Detective Seeberg to Gillman's fingerprints and confirmed that twelve identifications were made to Gillman. Ms. Roggenbeck also testified that nine of Gillman's prints were found on the interior side of the laptop display case glass. (Id. at 92, 99). A written report of Ms. Roggenbeck's findings was admitted into evidence. (Id. at 100-101); (State's Ex. 23).
 {¶ 20} The State's circumstantial evidence included testimony from Wal-Mart employees, photographic evidence, and video evidence. Jack Carpenter, a Wal-Mart employee, testified that he was working on September 28, 2006. (Oct. 5, 2007 Tr. at 22-23). Carpenter confirmed that the laptops were stored in a locked glass display case with models above the case. (Id. at 24). He also testified that he viewed the display case after the laptops had been removed, and that "[t]he metal was pulled out, outwards, so they could lift the glass up and get it out." (Id. at 28). *Page 9 
Carpenter further testified: "* * * there's a track in the bottom and top. And at that point when I walked up I seen that the glass wasn't in the track." (Id. at 31). Carpenter testified that he discovered two shopping carts in the electronics aisle that night, which he removed and placed in the main aisle. (Id. at 34). Carpenter testified that the laptop boxes have security strips inside, which will activate an alarm at the store's entrance. (Id. at 35). Finally, Carpenter testified that five laptops were taken from the laptop display case. (Id. at 31).
 {¶ 21} Timothy Stewart, a Wal-Mart market asset protection manager responsible for store security, safety, government compliance, and food quality assurance, testified on behalf of the State as well. (Id. at 41, 42). Stewart testified that he: investigated the September 28, 2006 theft; located four empty laptop boxes[1] in the general merchandise section of the store; and learned that the laptop case door had been removed. (Id. at 45, 46). Stewart was able to identify several of the photographs that were admitted into evidence, including the photographs of the boxes from the missing laptops. (Id. at 46-47). Stewart also explained the State's video evidence in detail. (Id. at 49-50, 52-56); (State's Ex. 1); (See supra, at 6).
 {¶ 22} Stewart further testified that, according to company records, no laptops were purchased that day, and the store has discontinued its layaway policy. *Page 10 
(Id. at 57). Stewart testified that the value of the five stolen laptops was $4,387. (Id). Finally, Stewart testified that he located the contents of the chair box that Gillman purchased inside the same Rubbermaid tote that Gillman used to conceal the laptops. (Id. at 62).
 {¶ 23} The State also submitted into evidence photographs of: Gillman entering and leaving Wal-Mart; boxes from the stolen laptops; the electronics aisle and the laptop display case; the yellow Rubbermaid tote with the unassembled chair inside; and the unassembled chair found inside the tote. (State's Exs. 14, 21, 5-9, 3, 2, 4, 13, 10-12).
 {¶ 24} Viewing all the evidence presented to the jury in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found Gillman guilty of theft and receiving stolen property beyond a reasonable doubt.
 {¶ 25} For all these reasons, Gillman's assignment of error is overruled.
 {¶ 26} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 WILLAMOWSKI and ROGERS, J.J., concur.
[1] The fifth laptop box was discovered the day after the theft (Sept. 29, 2006) and placed into the Wal-Mart office but was never given to the police. (Oct. 5, 2007 Tr. at 66-67). *Page 1