[Cite as *State v. Lowd*, 2010-Ohio-193.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### HANCOCK COUNTY

STATE OF OHIO,                                            CASE NO. 5-09-16

   PLAINTIFF-APPELLEE,

 v.

FRANK S. LOWD, JR.,                                    **O P I N I O N**

   DEFENDANT-APPELLANT.

Appeal from Hancock County Common Pleas Court
Trial Court No. 2008-CR-83

**Judgment Affirmed**

Date of Decision:  January 25, 2010

APPEARANCES:

   *Robert Searfoss, III* **for Appellant**

   *Mark C. Miller* **for Appellee**

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Frank S. Lowd, Jr. ("Lowd") brings this appeal from the judgment of the Court of Common Pleas of Hancock County. For the reasons set forth below, the judgment is affirmed.

{¶2} On April 1, 2008, Lowd was indicted on two counts of rape, in violation of R.C. 2907.02(A)(1)(b), and three counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4). Lowd entered pleas of not guilty to all counts on April 9, 2008. From March 30 to April 1, 2009, a jury trial was held. The jury returned verdicts of guilty to all counts on April 1, 2009. A sentencing hearing was held on April 14, 2009. The trial court entered judgment sentencing Lowd to ten years in prison on each of the first two counts, to be served consecutively, to five years in prison for the third count, to be served consecutive to the rape charges, and to five years each for the fourth and fifth counts, to be served concurrent to each other, but consecutive to the other counts. The total sentence imposed was 30 years in prison. Lowd appeals from this judgment and raises the following assignments of error.

### First Assignment of Error

**The trial court erred as a matter of law entering judgment of conviction on Count 1 for rape and Count 3 for gross sexual imposition because they are all allied offenses of similar import, not committed separately or each with a separate animus.**

**Second Assignment of Error**

**The trial court erred as a matter of law entering judgment of conviction on both Count 4 and Count 5 each for gross sexual imposition because they are allied offenses of similar import, not committed separately or each with a separate animus.**

**Third Assignment of Error**

**The trial court erred in entering judgments of conviction on Counts 2, 4, and 5 because those judgments are not supported by sufficient evidence.**

**Fourth Assignment of Error**

**The judgments of conviction for Counts 2, 4 and 5 are against the manifest weight of the evidence.**

{¶3} In the first and second assignments of error, Lowd alleges that convictions for counts one and three and convictions for counts four and five are not permitted because they are allied offenses of similar import, not committed separately, and not committed with a separate animus.

**(A)    Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.**

**(B)    Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kinds committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.**

R.C. 2941.25. The Ohio Supreme Court has long held that R.C. 2941.25 requires a two-step analysis. *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181; *State v. Blankenship* (1988), 38 Ohio St.3d 116, 526 N.E.2d 870; *State v. Logan* (1979) 60 Ohio St.2d 127, 397 N.E.2d 1345.

> **In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.**

*Blankenship,* supra at 117. The Ohio Supreme Court has also held that the elements of the offenses are to be compared in the abstract. *State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699. However, the Court clarified the requirements of *Rance* in *Cabrales.*

> **R.C. 2941.25 essentially codified the judicial merger doctrine. "The basic thrust of [R.C. 2941.25(A)] is to prevent 'shotgun' convictions. For example, a thief theoretically is guilty not only of theft but of receiving stolen goods, insofar as he receives, retains, or disposes of the property he steals. Under this section, he may be charged with both offenses but he may be convicted of only one, and the prosecution sooner or later must elect as to which offense it wishes to pursue." * * * If *Rance* imposed a strict textual comparison, even theft and receiving stolen property would *not* be allied offenses of similar import, because their elements do not exactly coincide.**
>
> **Were we to apply *Rance* as requiring a strict textual comparison as urged by the state, we would be compelled to reverse the**

**appellate court's holding that possession and trafficking under R.C. 2925.03(A)(2) of the same controlled substance are allied offenses of similar import, because the elements of these offenses do not coincide exactly, even though common sense and logic tell us that in order to prepare a controlled substance for shipping, ship it, transport it, deliver it, prepare it for distribution, or distribute it, one must necessarily also possess it. \* \* \***

**Even after *Rance*, this court has recognized that certain offenses are allied offenses of similar import even though their elements do not align exactly. \* \* \* In these cases, we did not overrule or modify *Rance*, but we did not apply a strict textual comparison in determining whether the offenses were allied under R.C. 2941.25(A). For example, the elements of theft and the elements of receiving stolen property differ, and therefore under a strict textual comparison test they could not be allied offenses of similar import under R.C. 2941.25(A). However, comparing these two offenses in [*State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, 817 N.E.2d 845], we found that they were allied, stating that "when the elements of each crime are aligned, the offenses'" correspond to such a degree that the commission of one crime'" resulted '"in the commission of the other,'"" the offenses are allied. \* \* \***

**Thus, we have already implicitly recognized that *Rance* does not require a strict textual comparison under R.C. 2941.25(A). Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import.**

**It is clear that interpreting *Rance* to require a strict textual comparison under R.C. 2941.25(A) conflicts with legislative intent and causes inconsistent and absurd results. Accordingly, we clarify that in determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), *Rance* requires courts to compare the elements of offenses in the abstract, i.e., without considering the evidence in the case, but does not require an exact alignment of elements.**

*Cabrales*, supra at ¶23-27 (citations ommitted).

**{¶4}** In the first assignment of error, Lowd claims that the first and third counts of the indictment are allied offenses of similar import. The first step in determining this is to examine the statutory requirements in the abstract. The first count charged Lowd with rape in violation of R.C. 2907.02(A)(1)(b).

> **No person shall engage in sexual conduct with another who is not the spouse of the offender \* \* \* when any of the following applies**
>
> **\* \* \***
>
> **(b)    The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.**

R.C. 2907.02(A)(1)(b). The third count charges Lowd with gross sexual imposition in violation of R.C. 2907.05(A)(4).

> **No person shall have sexual contact with another, not the spouse of the offender \* \* \* when any of the following applies:**
>
> **\* \* \***
>
> **(4)    The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.**

R.C. 2907.05(A)(4). The definition of sexual conduct includes vaginal intercourse between a male and female, anal intercourse, fellatio and cunnilingus. R.C. 2907.01(A). Sexual contact is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or if the person is a female, a breast for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). A review of the elements indicates

that it is impossible to engage in sexual conduct without also engaging in sexual contact. Thus, gross sexual imposition is an allied offense of rape. See *State v. Sparks* (Nov. 4, 1991), 12th Dist. No. CA91-02-004. However, this does not mean that Lowd cannot be convicted on both counts.

{¶5} The second step in the analysis is to determine whether there was a separate animus for the offenses or if they were committed at separate times. According to the testimony presented to the trial court, Lowd ordered the victim to rub his penis. He then ordered the victim to perform fellatio on him. These are separate acts and one was not incidental to the other. Additionally, the testimony was that these incidents occurred on more than one occasion. Thus, pursuant to R.C. 2941.25(B), Lowd could be charged and convicted of both offenses. The first assignment of error is overruled.

{¶6} In the second assignment of error, Lowd argues that the fourth and fifth counts of the indictment are also allied offenses of similar import. Both counts charge Lowd with gross sexual imposition in violation of R.C. 2907.05(A)(4). Being the same charge, the elements will obviously be identical. However, the counts allege that there were two victims and that both were under the age of 13. At trial, one of the victims, C.C. testified that Lowd told him and the other victim, S.S., to undress and that Lowd told him to lie on top of S.S. and attempt to put his penis inside her vaginal cavity. C.C. also testified that Lowd made S.S. perform fellatio on C.C.. This testimony presented two separate

incidents with two victims, both under the age of thirteen. Thus, Lowd can be charged and convicted of both counts of gross sexual imposition. The second assignment of error is overruled.

{¶7} The third assignment of error alleges that the verdicts are not supported by sufficient evidence.

> **Sufficiency of the evidence is a test of adequacy used to "determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." * * * A conviction based on insufficient evidence constitutes a denial of due process, and the defendant may not be recharged for the offense. * * * In reviewing a claim under the sufficiency of the evidence standard, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." * * ***

*State v. Alvarado*, 3d Dist. No. 12-07-14, 2008-Ohio-4411, ¶23 (citations omitted).

{¶8} A review of the record in this case indicates the following testimony. The first witness was Dwight Decker ("Decker"), who previously worked with Lowd. Tr. 204. Decker testified that Lowd told him that he had made a young girl perform fellatio on him and that he had made that girl and a young boy perform sexual acts with each other. Tr. 207-08. Decker testified that Lowd bragged about teaching the girl to perform fellatio. Tr. 208. Lowd also identified the kids in such a way that authorities were eventually able to locate them. Tr. 209-10.

{¶9} Detective Matthew Tuttle testified that he was the investigating officer. He spoke with Decker concerning the allegations and then proceeded to identify the victims. Tr. 233-242. He then interviewed the child witness, C.S., and the two victims, S.S. and C.C.. Tr. 242-257. He also interviewed Lowd as part of his investigation. Tr. 259.

{¶10} The grandmother of one of the victims testified that she had previously had a relationship with Lowd and that he had been left alone with the children on multiple occasions. Tr. 311. She testified that Lowd took the children camping and was alone with them when the incidents occurred. Tr. 318

{¶11} C.S. and S.S.'s mother testified that she permitted Lowd to watch the children as she thought he was a friend. Tr. 348-49. She testified that she allowed the children to go camping with Lowd. Tr. 351. She also testified that during the summer of 2006, after the start of the camping trips, S.S., then a 10 year old girl, began wetting the bed. Tr. 353. S.S. stopped wetting the bed after she no longer had contact with Lowd. Tr. 354.

{¶12} C.S. testified that he and S.S. went camping with Lowd a few times. Tr. 385. On one of the trips, he testified that he saw S.S. rubbing Lowd's penis at Lowd's instruction. Tr. 386. He also saw Lowd make S.S. perform fellatio. Id. This occurred more than once. Id. C.S. also testified that he heard Lowd tell S.S. and C.C. to disrobe. Tr. 389. Lowd then told C.C. to lie on top of S.S. and attempt to engage in vaginal intercourse with S.S. Id. C.S. testified that the

children complied because Lowd threatened to get them in trouble if they did not. Id.

{¶13} C.C. testified that he only went camping with Lowd on one occasion. Tr. 409. On that trip, no other adult besides Lowd was present. Tr. 400. At the time of the trip, he was 12 years old. Id. S.S. was younger than him. Tr. 399. C.C. testified that Lowd told him and S.S. to go into the tent and get undressed. Tr. 400. C.S. was not in the tent. Id. Lowd went into the tent as well and made S.S. perform fellatio on Lowd. Id. Lowd then told S.S. to perform fellatio on C.C. Tr. 401. After that, Lowd instructed S.S. to lie on the ground and C.C. to lie on top of her. Id. C.C. testified that at that time, his penis was touching S.S.'s vagina. Id. C.C. then testified that Lowd heard a noise and told them to get dressed. Id. C.S. walked into the tent while they were getting dressed. Id. C.C. testified that Lowd threatened to tell C.C.'s father something that would make him mad enough to paddle him in order to make him comply with Lowd's instructions. Id.

{¶14} Finally, Kay Schamp testified for the State. She testified that she was C.C.'s counselor. Tr. 479. She also testified that C.C. had told her he was sexually abused by Lowd. Tr. 481, 484.

{¶15} Following the State's case in chief, Lowd presented the testimony of three witnesses, Barry Cramer, Lance Lowd, and Rebecca Linda Lowd. These witnesses all testified that they had no reason to believe that Lowd would do this

and that family members of the victims had reason to be biased against Lowd. Lowd testified on his own behalf as well. He testified that he had been involved in sexual relationships with both the mother and grandmother of S.S. and C.S.. Tr. 588, 590. He also testified that Decker "had it in for him" because they had a disagreement at work. Tr. 597. Decker allegedly would frequently try to cause trouble for him at work. Tr. 601-02. Lowd admitted to taking the children camping, but denied any sexual contact with them or having C.C. and S.S. engage in sexual conduct. Tr. 613.

{¶16} Viewing the evidence in a light most favorable to the state, there is evidence that Lowd made S.S. perform fellatio on him on two different occasions – one time witnessed by C.S. and one time witnessed by C.C. when C.S. was not in the tent. Thus, the two rape charges are supported by sufficient evidence. There is also evidence per the testimony of C.S. that Lowd made S.S. rub his penis, thus supporting the conviction on the third count. Finally, C.C. testified as to the sexual contact between himself and S.S. that occurred at the direction of Lowd. This testimony was bolstered by the testimony of C.S. that he heard Lowd directing C.C. and S.S.. Thus, there is sufficient evidence to support the convictions on the fourth and fifth counts of gross sexual imposition. The third assignment of error is overruled.

{¶17} Lowd alleges in the fourth assignment of error that his convictions are against the manifest weight of the evidence. Unlike sufficiency of the

evidence, the question of manifest weight of the evidence does not view the evidence in a light most favorable to the prosecution.

> **Weight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*"**

*State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 514 (citing Black's Law Dictionary (6 Ed.1990) 1594). A new trial should be granted only in the exceptional case in which the evidence weighs heavily against conviction. Id. Although the appellate court acts as a thirteenth juror, it still must give due deference to the findings made by the jury.

> **The fact-finder, being the jury, occupies a superior position in determining credibility. The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness' reaction to exhibits and the like. Determining credibility from a sterile transcript is a Herculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder.**

*State v. Thompson* (1998), 127 Ohio App.3d 511, 529, 713 N.E.2d 456.

{¶18} A review of the record in this case indicates that the defense presented by Lowd was one of complete denial. Thus, the jury had to determine who was more credible: C.S. and C.C. or Lowd. No one else who testified had

direct knowledge of what happened on the camping trips. In support of C.S. and C.C., the State also presented the testimony of Decker as to what Lowd allegedly admitted to him. This court must give deference to the findings of the jury. Given the testimony as discussed above, this court does not find that the weight of the evidence weighs heavily against conviction or that the jury lost its way. Thus, the verdicts are not against the manifest weight of the evidence. The fourth assignment of error is overruled.

{¶19} Having found no error prejudicial to the defendant, the judgment of the Court of Common Pleas of Hancock County is affirmed.

*Judgment Affirmed*

**ROGERS and PRESTON, J.J., concur.**

**/jnc**