[Cite as *State v. Fisher*, 2010-Ohio-5192.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,                                          CASE NO. 2-10-09

    PLAINTIFF-APPELLEE,

 v.

MALLORY FISHER,                                          **O P I N I O N**

    DEFENDANT-APPELLANT.

**Appeal from Auglaize County Municipal Court**
**Trial Court No. 09-CRB-153**

**Judgment Affirmed**

**Date of Decision:  October 25, 2010**

**APPEARANCES:**

    *Quentin M. Derryberry, II,* **for Appellant**

    *Darren L. Meade,* **for Appellee**

**ROGERS, J.**

{¶1} Defendant-Appellant, Mallory Fisher, appeals the judgment of the Municipal Court of Auglaize County convicting her of theft in violation of R.C. 2913.02 and sentencing her to community control, ordering her to complete community service, and ordering her to pay restitution. On appeal, Fisher asserts that she was denied due process because the complaint failed to state the essential elements of the offense; that the trial court erred in allowing the State to interject a reliance on R.C. 4933.18 after it had rested and she had moved for acquittal; and, that the verdict was against the manifest weight of the evidence. Based upon the following, we affirm the judgment of the trial court.

{¶2} In March 2009, Fisher was charged via complaint with theft in violation of R.C. 2913.02(A)(2), a misdemeanor of the first degree. The complaint stemmed from an incident whereby Fisher's electricity was illegally reconnected following shut-off for nonpayment. Thereafter, Fisher entered a plea of not guilty.

{¶3} In October 2009, the case proceeded to a bench trial, and the following testimony was heard.

{¶4} Diane Blackburn testified that she was the office manager for the City of Wapakoneta and oversaw the utility department; that, in February 2009, Fisher was receiving utility service from the city at 911 Middle Street, Apartment

B, in Wapakoneta; that, on February 1, 2009, the utility department sent Fisher a bill for $492.70 and disconnection notice stating that her electrical service would be disconnected on February 19, 2009, if she did not pay an arrearage of $168.20; that the notice stated "disconnection notice" twice, in large, bold print; that, pursuant to a work order she prepared, Fisher's electrical service was disconnected for nonpayment on February 19, 2009; that the work order was signed and dated by two employees of the electrical department and listed a final meter reading; that, on March 13, 2009, an electrical employee observed that the meter had been tampered with and turned back on and reported it to the utility department; that the March 13, 2009 reading of the meter revealed that approximately 1,200 kilowatts had been consumed at Fisher's apartment following the February 19, 2009 disconnection; that this amount of power was valued at over $100; and, that there had been no order to reconnect electrical service at Fisher's apartment, as she still had an outstanding delinquent bill at that point. On cross-examination, Blackburn testified that the meter readings revealed that the electric had been reconnected, but that she did not know when or by whom.

{¶5} Barry Erb, an electrical lineman with the Wapakoneta electric department, testified that, on February 19, 2009, he disconnected the electric at 911 Middle Street, Apartment B; that, in order to disconnect the electric, he receives a work order, breaks the meter seal, removes the meter cover, pulls the

meter out of the socket, places plastic "boots" onto the bottom spades of the meter, inserts the meter back into the socket, and replaces the meter cover and seal; that he followed this process at Fisher's apartment and double-checked to make sure the meter was not moving; that it is not difficult for a layperson to reconnect the electric after it has been disconnected; that, to reconnect the electric, one would need to use tin snips to cut the seal, remove the meter cover, remove the "boots" from the meter, and push it back into the socket; that he had seen approximately twenty to twenty-five illegally reconnected meters in his twenty-seven years of experience; and, that it was dangerous to reconnect meters because they could cause electrocution, but that the likelihood of this occurring was slim. On cross-examination, Erb testified that he had no personal knowledge whether Fisher reconnected the meter.

{¶6} Bill Lambert, the Superintendent of the City of Wapakoneta electrical department, testified that he had both disconnected and reconnected electrical service as part of his job; that he inspected the meter at Fisher's apartment after a meter reader reported it appeared suspicious; that the meter was running and the meter seal was missing; that he called the police department to request an officer; that, after removing the meter, he discovered the "boots" were laying on the bottom of the socket; and, that it is very simple for someone to reconnect a disconnected meter by removing the "boots" and breaking the seal

with wire-cutters. On cross-examination, Lambert testified that he did not have personal knowledge that Fisher ever touched or tampered with the meter.

{¶7} Lieutenant Calvin Schneider testified that he was a police officer with the City of Wapakoneta; that he responded to a complaint regarding meter tampering on March 13, 2009, at Fisher's apartment; that he observed the meter was running; that he took photographs of the meter and then the electric department employees disconnected and removed the meter; that he spoke to Fisher and asked her if her power was on, and she responded that it was not; that Fisher stated her power had been on the prior evening; that he inquired whether she knew why her power was no longer on, and she replied it was because she did not pay her bill; that he asked Fisher if she had tampered with the meter, and she replied that she had not; that he inquired whether she was married or had a boyfriend, and she indicated that she lived alone and that she did not have a boyfriend and did not have anyone tamper with the electric for her; that he told Fisher she was responsible for her meter and the fact that she was receiving electricity illegally, and she stated that she understood; that, approximately three weeks later, Fisher came to the police department and asked him "if she would pay the [electric bill] amount in full if [he] would drop the charges" (trial tr., vol. I, p. 85); and, that he told her he did not have the power to do that. On cross-

examination, Lieutenant Schneider testified that he had no independent knowledge whether Fisher had been served with a summons.

{¶8} Thereafter, the State rested and Fisher moved for acquittal, which the trial court denied.[1]

{¶9} Fisher then testified that she was twenty-two years old; that she had lived at the Middle Street apartment for approximately one year; that, during that time, she could not remember any period during which she did not have electricity; that, on March 13, 2009, soon after she awoke, a police officer came to her apartment and asked her if her electric had been turned off; that she looked at her radio and responded that she did not have electric, but had it the night before; that the officer inquired as to if she knew why she had no electric, and she replied that she had forgotten to pay her bill; that the officer asked her if she had anyone turn her electric back on, and she did not know what he was talking about; that, after leaving for work several hours later, she never returned to the apartment except to retrieve her belongings; that, on March 27, 2009, she went to the police

---

[1] "The purpose of a motion for judgment of acquittal is to test the sufficiency of the evidence and, where the evidence is insufficient, to take the case from the jury. In the non-jury trial, however, the defendant's plea of not guilty serves as a motion for judgment of acquittal, and obviates the necessity of renewing a Crim.R. 29 motion at the close of all the evidence. See the following cases decided under the analogous Fed.R.Crim.P. 29: *Hall v. United States* (C.A.5, 1961), 286 F.2d 676, 677, certiorari denied, 366 U.S. 910, 81 S.Ct. 1087, 6 L.Ed.2d 236; *United States v. Besase* (C.A.6, 1967), 373 F.2d 120, 121; *United States v. Pitts* (C.A.5, 1970), 428 F.2d 534, 535, certiorari denied, 400 U.S. 910, 91 S.Ct. 154, 27 L.Ed.2d 149. See also, 8A Moore's Federal Practice, Paragraphs 29.01 Et seq." *Dayton v. Rogers* (1979), 60 Ohio St.2d 162, 163, overruled on other grounds by *State v. Lazzaro* (1996), 76 Ohio St.3d 261, 266, 667. Accordingly, a Crim.R. 29 motion for acquittal had no application in a bench trial. See *State v. Massie*, 5th Dist. No. 05CA000027, 2006-Ohio-1515, ¶23.

department to speak with Lieutenant Schneider because she was hoping "he would drop the charges if [she] paid it [the electric bill]" (trial tr., vol. II, p. 12); that, at that point, she had no knowledge of any charges being filed against her; that, on April 15, 2009, her supervisor at work informed her that she needed to go to the sheriff's department the following morning; that this was approximately two to three weeks after she had previously spoken to Lieutenant Schneider; that the officer took her into the courtroom, but she was not given any document informing her of any criminal charges or why she was there; and, that she did not learn she was being charged with a crime until she obtained an attorney.

{¶10} On cross-examination, Fisher testified that she was the responsible party for the utilities at her apartment; that she did not recall her utilities being turned off on February 19, 2009; that she did not dispute that she had not paid her bill; that she was behind on her electric bill by $477.24 in February; that she had made several payments between November 2008 and January 2009, but that for some reason they were not reflected on her February 2009 bill; that she did not remember noticing her payments were not reflected on the February bill; that she did not remember seeing the disconnection notice mailed to her in February 2009; that she did not think it was unusual that she was still receiving electric power in March even though she had a delinquent balance and had not paid her February bill; that she did not think the electric company gave away power for free; that she

did not know her power was ever turned off, so she had no idea who had reconnected it; that it must have been reconnected within hours of being disconnected by the electric company, otherwise she would have noticed; that, when she asked Lieutenant Schneider to drop the charges if she paid her bill, she did not know for certain that any charges were pending; that, when she was brought before the trial court on April 16, 2009, the judge explained to her that she was being charged with theft and informed her of the various pleas she could enter, and she responded "the guilty one * * * because I already know what I did" (id. at 44); that what she meant was she believed she was "guilty" of not paying her electric bill; that the trial court judge had advised her prior to her entering the plea that the theft charge was based on her electricity being illegally reconnected, so she did know at the time she entered her plea that she was not being charged solely for not paying her bill; that Lieutenant Schneider never mentioned that her utilities had been illegally reconnected during their conversations; and, that she believed Lieutenant Schneider came to her apartment just to tell her that her electricity was shut off. Additionally, Fisher initially testified that she did not have a boyfriend at the time when Lieutenant Schneider came to her door to inquire about the electricity, but then testified that she did have a boyfriend during that time period who stayed at her apartment occasionally, and that she did not

recall advising Lieutenant Schneider that she did not have a boyfriend; and, that she knew of no one who would have an interest in reconnecting her electricity.

{¶11} Thereafter, Lieutenant Schneider testified on recall that Fisher told him she did not have a boyfriend, and that he advised Fisher that her power had been turned off and reconnected illegally and that she was responsible for any tampering with the meter. The trial then concluded.

{¶12} In November 2009, the trial court found Fisher guilty[2] of theft in violation of R.C. 2913.02(A)(2), specifically stating that her testimony as to not being aware of her pending electrical disconnect and how it was reconnected was not credible.

{¶13} In December 2009, the trial court sentenced Fisher to community control until January 1, 2012, ordered her to serve one-hundred hours of community service, and ordered her to pay restitution in the amount of $111.82, plus "any other expenses related to the 2nd disconnect." (Dec. 2009 Sentencing Entry, p. 1).

{¶14} In January 2010, Fisher appealed the judgment of the trial court. Thereafter, this Court dismissed Fisher's appeal for lack of jurisdiction because the judgment entry failed to comply with Crim.R. 32(C), as it failed to include the

---

[2] We note that the trial court issued written findings of fact in this case, which is contrary to the directive contained in Crim.R. 23. When a bench trial is held, the court is to make a general finding; i.e. guilty or not guilty. See Crim.R. 23(C).

means of conviction. Shortly thereafter, the trial court issued a journal entry nunc pro tunc reflecting that Fisher was found guilty via a bench trial.

{¶15} It is from her conviction and sentence that Fisher appeals, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**DEFENDANT HAS BEEN DENIED DUE PROCESS BECAUSE THE COMPLAINT FAILS TO STATE THE ESSENTIAL ELEMENTS OF ANY OFFENCE [SIC] AS PRESCRIBED BY OHIO R. CRIM. P. 3**

*Assignment of Error No. II*

**THE COURT ERRED IN ALLOWING THE PROSECUTION TO FIRST INTERJECT A RELIANCE ON R.C. 4933.18 AFTER IT HAD RESTED AND AFTER DEFENDANT HAD MOVED FOR A VERDICT OF ACQUITTAL.**

*Assignment of Error No. III*

**THE VERDICT[3] WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶16} Due to the nature of Fisher's arguments, we elect to address her first and second assignments of error together.

*Assignments of Error Nos. I & II*

{¶17} In her first assignment of error, Fisher contends that she was denied due process because the complaint failed to state the essential elements of the

---

[3] We note that a "verdict" is rendered only after a trial by jury. Crim.R. 31. At a bench trial, the trial court renders a general finding. Crim.R. 23(C).

offense for which she was tried. Specifically, Fisher contends that the general charge of theft was only narrowed by specification that it was an act beyond the scope of the express or implied consent of the owner or person authorized to give consent pursuant to R.C. 2913.02(A)(2).

{¶18} In her second assignment of error, Fisher contends that the trial court erred in allowing the State to first interject a reliance on R.C. 4933.18 after it had rested and after she had moved for a verdict of acquittal. Specifically, Fisher argues that the State should not have discussed R.C. 4933.18 in conjunction with the charges against her.

{¶19} If a charging instrument contains the elements of the offense charged and fairly informs the defendant of the charge against which she must defend and enables her to present an acquittal or conviction of the charge as a bar to future prosecutions for the same offense, it will satisfy federal and state constitutional requirements. *State v. Reinhart*, 3d Dist. No. 15-06-07, 2007-Ohio-2284, ¶14, citing *State v. Buehner*, 110 Ohio St.3d 403, 2006-Ohio-4707, ¶9. Specifically, "an indictment or, in this case, an information must allege all elements of the crime intended[.] * * * If an essential and material element identifying the offense is omitted from the information, it is insufficient to charge an offense." *State v. Daniels*, 3d Dist. No. 12-03-12, 2004-Ohio-2063, ¶3, quoting *State v. Keplinger*, 12th Dist. No. CA2002-07-013, 2003-Ohio-3447, ¶7. See, also, *State v. Cimpritz*

(1953), 158 Ohio St. 490, 493; *State v. Strickler*, 3d Dist. No. 3-82-17, 1983 WL 4520. Further, "[a] judgment of conviction based on an indictment which does not charge an offense is void for lack of jurisdiction of the subject matter and may be successfully attacked either on direct appeal to a reviewing court or by a collateral proceeding." *State v. Wozniak* (1961), 172 Ohio St. 517, 520, quoting *Cimpritz*, 158 Ohio St. at 490-491.

{¶20} Here, Fisher was charged with and convicted of theft in violation of R.C. 2913.02(A)(2), which provides:

> **(A)    No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:**
>
> **\* \* \***
>
> **(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;**

Additionally, R.C. 4933.18(A) discusses tampering with utility equipment and provides, in pertinent part:

> **In a prosecution for a theft offense, as defined in section 2913.01 of the Revised Code, that involves the alleged reconnection of a gas, electric, steam, or water meter, conduit, or attachment of a utility that has been disconnected by the utility, proof that a meter, conduit, or attachment disconnected by a utility has been reconnected without the consent of the utility is prima-facie evidence that the person in possession or control of the meter, conduit, or attachment at the time of the reconnection has reconnected the meter, conduit, or attachment with intent to commit a theft offense.**

{¶21} Here, the complaint charging Fisher with theft specifically alleged that "MALLORY JO FISHER * * * at or before the 19th day of February 2009, and the 13th day of March 2009, within Auglaize County, Ohio the said MALLORY JO FISHER, with purpose to deprive the owner of property or services, did knowingly obtain or exert control over either the property or services beyond the scope of the express or implied consent of the owner or person authorized to give consent.  Said act is a misdemeanor of the first degree and contrary to Ohio Revised Code Section 2913.(A)(2) [sic] in such case made and provided, and against the peace and dignity of the State of Ohio."  This complaint tracks the language of the charging statute, R.C. 2913.02(A)(2), and contains all essential and material elements of the offense.  The complaint was not required to "narrow" the offense further, as Fisher claims, and we note that the record does not reflect that Fisher ever requested a bill of particulars or was denied the same.

{¶22} Further, it is clear that R.C. 4933.18(A) sets the standard to establish a prima facie case for a theft case involving the alleged reconnection of an electric meter, and is not an element of the theft offense under R.C. 2913.02(A)(2), nor an offense itself for which a defendant may be charged.  Cf. *City of Hamilton v. Kuehne*, 12th Dist. No. CA-98-05-111, 1999 WL 298077 (finding that R.C. 4933.19 does not state an offense and a defendant's conviction for violation of that

statute was void). Thus, we do not find that the complaint was deficient for failing to refer to R.C. 4933.18(A) or that the State erred in referring to it at trial.

{¶23} Accordingly, we overrule Fisher's first and second assignments of error.

*Assignment of Error No. III*

{¶24} In her third assignment of error, Fisher argues that the guilty verdict was against the manifest weight of the evidence. Specifically, Fisher contends that none of the city employees testifying as witnesses had any personal knowledge that Fisher had reconnected her electrical service.

{¶25} When an appellate court analyzes a conviction under the manifest weight standard, it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, superseded by constitutional amendment on other grounds as stated by *State v. Smith,* 80 Ohio St.3d 89, 1997-Ohio-355, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.

**{¶26}** Direct evidence is "evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." Black's Law Dictionary (8 Ed.2004) 596. Circumstantial evidence is "evidence based on inference and not on personal knowledge or observation." Id. at 595. Additionally, circumstantial evidence has been defined as "the proof of certain facts and circumstances in a given case, from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind." *State v. Duganitz* (1991), 76 Ohio App.3d 363, 367, citing Black's Law Dictionary (5 Ed.1979) 221.

**{¶27}** Direct evidence of a fact is not a prerequisite for a trial court to make a finding of that fact. See *State v. Lott* (1990), 51 Ohio St.3d 160, 167; *Michalic v. Cleveland Tankers, Inc.* (1960), 364 U.S. 325, 330. In fact, circumstantial evidence and direct evidence have the same probative value, *State v. Gillman*, 3d Dist. No. 14-08-08, 2008-Ohio-2606, ¶17, citing *State v. Jenks* (1991), 61 Ohio St.3d 259, 272, and "'[c]ircumstantial evidence * * * may also be more certain, satisfying and persuasive than direct evidence.'" *Lott*, 51 Ohio St.3d at 167, quoting *Michalic*, 364 U.S. at 330. Furthermore, "'[w]hen the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.'" *State v. Williams*, 73 Ohio St.3d

153, 165, 1995-Ohio-275, quoting *Jenks*, 61 Ohio St.3d 259, at paragraph one of the syllabus.

**{¶28}** Here, although none of the witnesses could testify that he or she had personal knowledge that Fisher had reconnected her electrical service, a large amount of circumstantial evidence supported this conclusion. Testimony was heard that Fisher was the responsible party for the utilities at her apartment; that she was mailed a disconnection notice and a bill for $492.70, including arrearages, on February 1, 2009; that her electricity was disconnected on February 19, 2009; that Fisher lived alone; that a March 13, 2009 reading of the meter revealed over $100 worth of electricity had been consumed at the apartment after the disconnection; that the meter was running on March 13, 2009, the seal had been broken, and the "boots" had been removed; that it was not difficult for a layperson to reconnect electricity after it had been disconnected; that Fisher told a police officer she did not have electricity because she did not pay her bill; that the officer informed her that she was responsible for the meter and was receiving electricity illegally, which she stated she understood; that Fisher went to the police department and asked them to "drop the charges"; and, that Fisher told the trial court judge she wanted to plead guilty because "she knew what she did." We cannot find that, based on the preceding, Fisher's conviction was against the manifest weight of the evidence.

{¶29} Accordingly, we overrule Fisher's third assignment of error.

{¶30} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**WILLAMOWSKI, P.J., and PRESTON, J., concur.**

**/jnc**