[Cite as *State v. Duncan*, 2011-Ohio-1168.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 1-10-59

    v.

JOYCE E. DUNCAN,                    O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2009-03253

**Judgment Affirmed**

Date of Decision: March 14, 2011

APPEARANCES:

    *Michael J. Short* **for Appellant**

    *Christina L. Steffan* **for Appellee**

**WILLAMOWSKI, J**.

{¶1} Defendant-Appellant, Joyce Duncan ("Duncan"), appeals the judgment of conviction entered against her in the Allen County Court of Common Pleas following a bench trial in which Duncan was found guilty of grand theft. On appeal, Duncan contends that her conviction was not supported by sufficient evidence and that it was against the manifest weight of the evidence. For the reasons set forth below, the judgment is affirmed.

{¶2} Duncan was employed as the administrator of Thin and Healthy Total Solutions ("Thin & Healthy") from July 2008 to January 2009, while the regular administrator was on maternity leave. Duncan's duties included taking care of the front desk, handling money that came in, and general paperwork. One of the tasks connected with the handling of money was the preparation of day sheets (to record the daily receipts and transactions) and making the nightly bank deposits. The company accepted cash, checks and credit card payments for the goods and services it sold to its customers at its Lima facility.

{¶3} During the time period when Duncan was in charge of the receipts and deposits, the bank deposits were not being made every night and often there appeared to be a lag in the time when the deposits were eventually made. Thin & Healthy's director, Janice Brown, spoke with Duncan about the matter and emphasized the importance of making the daily deposits. In January of 2009, Ms.

Brown was notified that there was over $10,000 missing from the deposits and an internal investigation ensued. This consisted of reviewing the day sheets and viewing security footage from the bank. In addition, the investigators went to the bank and examined the deposit slips and learned that the deposit slips at the bank did not match the ones kept at the business. There were 56 instances of bank deposit slips that were inaccurate or missing. Thin & Healthy believed Duncan was stealing the money and terminated her employment.

{¶4} On November 12, 2009, the Allen County Grand Jury returned an indictment charging Duncan with one count of grand theft, a felony of the fourth degree in violation of R.C. 2913.02(A)(1)&(B)(2). Duncan waived her right to have her case tried by a jury and a bench trial was held on June 21, 2010.

{¶5} The trial court heard testimony from Thin & Healthy's previous administrator, Diane Judy; the director, Janice Brown; Thin & Healthy's owner and V.P., Donna Krech; the vice president, internal auditor and risk officer for Union Bank, Jeff Point; Thin & Healthy's director of administration, Kellie Valenti; Thin & Healthy's independent accountant, MaryBeth Banks; Lt. Darrell Pugin, investigator at the Allen County Sheriff's Department; and, Deputy John Butler, who also interviewed Duncan regarding the missing money. After the State rested, Duncan called one witness on her behalf, Beth Nolan, who used to work at Thin & Healthy as a metabolism re-trainer.

{¶6} The trial court found Duncan guilty of the single count in the indictment and filed a "Verdict of Court and Judgment Entry."[1] A sentencing hearing was held on July 29, 2010, and Duncan was sentenced to eighteen months in prison. Duncan was also ordered to pay $12,604.29[2] in restitution to Thin & Healthy. Duncan timely appeals, raising the following two assignments of error.

**First Assignment of Error**

**The conviction is against the manifest weight of the evidence.**

**Second Assignment of Error**

**There was insufficient evidence to support the conviction.**

{¶7} Although involving different standards, the two issues are closely related and rely on similar facts, so we will review them together. Duncan argues that the evidence suggested that any missing money could be attributable to sloppy accounting practices on the part of Thin & Healthy. Duncan further argues that there was no evidence that she was the person who altered the deposit slips. Although the writing on the slips "appeared to be" Duncan's, there was no expert handwriting testimony presented to verify this. Therefore, Duncan asserts that the conviction was not supported by either the weight of the evidence or the sufficiency of the evidence.

---

[1] We note that a "verdict" is rendered only after a trial by jury. Crim.R. 31. At a bench trial, the trial court renders a general finding. Crim.R. 23(C).

[2] The restitution consisted of $10,446.29 to cover the amount of money taken plus $2,158 to cover the cost of the accountant's bill and expenses involved with the investigation and trial.

{¶8} When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence submitted at trial, if believed, could reasonably support a finding of guilt beyond a reasonable doubt. See *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541, 546 (stating, "sufficiency is the test of adequacy"); *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492, 503. The standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jenks*, supra. This test raises a question of law and does not allow the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

{¶9} A challenge to a conviction based on the manifest weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis sic.) *State v. Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. A new trial should be granted only in the exceptional case in which

the evidence weighs heavily against conviction. Id. Although the appellate court acts as a "thirteenth juror," it still must give due deference to the findings made by the fact-finder. *State v. Hunt*, 3d Dist. No. 3-09-06, 2009-Ohio-5435, ¶4; *State v. Thompson* (1998), 127 Ohio App.3d 511, 529, 713 N.E.2d 456. Unlike sufficiency of the evidence, the question of manifest weight does not view the evidence in a light most favorable to the prosecution. *State v. Lowd*, 3d Dist. No. 5-09-16, 2010-Ohio-193, ¶17.

{¶10} In order to convict Duncan of grand theft, the State was required to prove that Duncan, with purpose to deprive the owner of property or services, knowingly obtained or exerted control over the property or services of another without the consent of the owner or person authorized to give consent. R.C. 2913.02(A)(1). When the value of the property or services is over five thousand dollars (but less than $100,000), the violation constitutes grand theft and is a felony of the fourth degree. R.C. 2913.02(B)(2).

{¶11} In reviewing the entire transcript from the trial and all of the evidence in a light most favorable to the prosecution, we find that there was sufficient evidence of each element of the offense to find Duncan guilty beyond a reasonable doubt. Four of Thin & Healthy's employees/officers testified that, between August 2008 and January 2009 (except for one week when Duncan was out sick), Duncan was the only person who was responsible for calculating the

receipts, maintaining the cash records, creating the day sheets, filling out the deposit slips and making the bank deposits. They explained the accounting system in detail and testified that there had never been any problems with receipts and deposits balancing during the times before or after Duncan was responsible for the job, and there were no problems with the balances during the one week in October when Duncan was out sick and Ms. Brown handled the cash records and deposits. Ms. Brown's testimony confirmed that "Joyce Duncan was in charge of everything."

{¶12} The day sheets, bank records, computer Quicken system print-outs, and deposit slips from the time period in question were all identified at the trial and admitted into evidence. Kellie Valenti, Thin & Healthy's director of administration who was in charge of accounting and bank reconciliations, testified that Duncan was the person who would have inputted all the information to the day sheets and she would have created all of the deposit slips.

{¶13} Ms. Valenti first noticed problems with a lag in the time when deposits were being made. Upon investigation, they discovered that there had been date changes and changes made in the amounts of cash and checks. In comparing the deposit slips from the bank to the copies on file at the business for the same day, she discovered that many of the deposit slips contained different amounts. The amounts actually deposited into the bank were less than the

amounts recorded as receipts. For example, one day's records at the business showed cash receipts of $462.93, but only $36.91 was deposited into the bank. (Trial Tr. pp. 98-99.) The deposit slips at the company and the bank slips *should have* matched because they were duplicate copy forms.

{¶14} Ms. Valenti also testified that Duncan had requested extra deposit slips from her. Although Ms. Valenti didn't believe it was a problem at the time, she testified that she thought that they were going through deposit slips awfully fast.

{¶15} When first questioned about deposits not being made, Duncan claimed that she had been making regular deposits. However, when the bank's video camera records were checked, there was no record of Duncan making a deposit on many of the days that she claimed she did. Ms. Brown also testified that when they first realized money was missing, Duncan talked with her and offered to pay back the money if the matter would "go away." (Trial Tr., p. 36.)

{¶16} On appeal, Duncan claims that there was no evidence that the handwriting on the deposit slips and records was hers. However, all of the testimony indicated that she was the *only* person responsible for keeping those records and filling out the deposit slips and Thin & Healthy's owner testified that the handwriting appeared to be Duncan's. Furthermore, Lt. Pugin testified that when he questioned Duncan about the documents, she stated that "it could be" her

handwriting; she did not deny that it was her handwriting; and she did not identify anyone else whose handwriting it could have been. (Trial Tr., pp. 128-29.) Deputy Butler also confirmed that Duncan indicated that the handwriting appeared to be hers when he later questioned Duncan. (Id. at p. 37.)

{¶17} Duncan complains that there was not sufficient evidence to directly connect her with the criminal transactions. Generally, the intent of a person cannot be proven by the direct testimony of a third person, rather it must be gathered from the surrounding facts and circumstances of the particular case. *State v. Johnson* (1978), 56 Ohio St.2d 35, 381 N.E.2d 637, quoting *State v. Huffman* (1936), 131 Ohio St. 27, 1 N.E.2d 313. "Direct evidence of a fact is not a prerequisite for a trial court to make a finding of that fact*." State v. Cornett*, 3d Dist. No. 13-09-13, 2009-Ohio-3531, ¶ 11, citing *State v. Lott* (1990), 51 Ohio St.3d 160, 167, 555 N.E.2d 293. Circumstantial evidence and direct evidence have the same probative value. *State v. Gillman*, 3d Dist. No. 14-08-02, 2008-Ohio-2606, ¶17. As stated above, and construing the evidence in favor of the prosecution, there was more than sufficient evidence for the fact-finder to reasonably conclude that Duncan knowingly committed the charged offense with the purpose of taking cash from Thin & Healthy for her own use.

{¶18} We also do not find that the decision was against the manifest weight of the evidence. Although Duncan claimed that the missing money could be

attributable to "sloppy accounting procedures," there was no evidence of any poor accounting procedures, other than perhaps a lack of monitoring of Duncan's actions because the Thin & Healthy personnel believed that she was trustworthy. There was a delay in finding the problem because Duncan was covering up the shortage in her cash deposits by including checks from a later date to try to hide the discrepancies. Duncan's own witness testified that, when she occasionally received payment for a product, the procedures required her to put the funds in a cash box next to the corresponding receipt for money. It was then Duncan's responsibility to properly record each day's transactions and deposit the funds in the bank.

{¶19} The testimony of all of the State's witnesses was consistent with each other, and there was no evidence offered to impeach or contradict any of their testimony. Furthermore, the trier of fact was in the better position to judge the credibility of the witnesses. We cannot say that the fact finder lost its way or that the evidence weighed heavily against conviction.

{¶20} Because there was sufficient credible evidence to prove each element of the offense charged and the conviction was not against the manifest weight of the evidence, we overrule Duncan's first and second assignments of error. Having

found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**ROGERS, P.J. and SHAW, J., concur.**

**/jlr**