[Cite as *State v. Kimmell*, 2011-Ohio-660.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## WYANDOT COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 16-10-06

    v.

ALISHA KIMMELL,                  O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Upper Sandusky Municipal Court
Trial Court No. CRB-10-00055

**Judgment Affirmed**

**Date of Decision: February 14, 2011**

APPEARANCES:

    *Charles R. Hall, Jr.* for Appellant

    *Kathryn M. Collins* for Appellee

Case No. 16-10-06

**WILLAMOWSKI, J.,**

{¶1} Defendant-Appellant, Alisha K. Kimmell ("Alisha"), appeals the judgment of the Upper Sandusky Municipal Court finding her guilty of domestic violence against her estranged husband, Nicholas G. Kimmell ("Nick"). Alisha claims that the decision was against the manifest weight of the evidence and that the trial court failed to properly consider her self-defense claim. For the reasons set forth below, the judgment is affirmed.

{¶2} Alisha and Nick were married in 1996 and have three minor children. The couple had an "on and off" separation for the six-to-twelve months prior to this incident. Nick remained in the marital home with the children while Alisha lived with various friends. From February 10, 2010 through the morning of Febrary12, 2010, Alisha was staying at the home with Nick and the children in order to discuss reconciliation and to facilitate attending their son's school program.

{¶3} The offense, which is the subject of this appeal, arose out of an incident that occurred on the morning of February 12, 2010, after the children went to school and while Nick was trying to get ready for work.[1] Alisha became upset because she believed that Nick was going to take a "girlfriend" to a concert instead of her. Alisha began to repeatedly question Nick, she refused to leave the

---

[1] This incident was actually the culmination of several contentious incidents that had occurred during the time when Alisha was staying in the home.

bathroom where Nick was trying to get ready, and a physical altercation ensued. Both Alisha and Nick ended up with minor bruises and both went to the sheriff's office to file domestic violence charges against the other.

{¶4} This appeal involves the domestic violence charge against Alisha, in violation of R.C. 2919.25(A). A bench trial was held on May 4, 2010, and the trial court heard the testimony of Nick, Alisha, and Lieutenant Todd Frey ("Lt. Frey"), the officer who took the original reports and investigated the cases.

{¶5} At trial, Nick testified that Alisha was upset and crying, and she admitted that she had not taken her depression medications. When she began to push him and yell at him about the concert, Nick testified that he went into the bathroom to get ready for work. Alisha followed him and kept her leg in the doorway to prevent him from closing the door. When he was unable to push her away to close the door, Nick started to get ready anyway. Alisha then tightly grabbed his penis, through his pants, causing him to end up on his knees next to the bathtub. When Nick was eventually able to free himself, he testified that "she went to the floor, wrapped her arms around my ankles and bit on to the back of the calf of my leg." As he tried to get away, she continued to hold on and continued biting as he dragged her through the bathroom doorway, finally causing her to let go by dragging her against the doorframe. He acknowledged that he was pretty forceful and he may have kicked her as he dragged her. Nick then put on his boots

and left.  He saw Alisha throw a crock pot at a television on the porch as he drove away.  He returned after about 15 minutes, hoping that Alisha would be gone. When Nick discovered she was still there, he went to the sheriff's office and filed a report.

{¶6}  Alisha's testimony was somewhat different in that she described the same incident, but testified that she had started crying because Nick was yelling at her.  She acknowledged that she then started to repeatedly question him about whom he was taking to the concert and that she followed him into the bathroom. However, she said Nick pushed her into the doorknob, causing her to fall to the ground, and that he tried to kick her out of the way.  She testified that "[h]e tried to kick my feet back and push them back with his feet to get me out of the way so he could shut the door and lock it and I wouldn't move."  She then followed Nick to the bathroom and continued questioning him.  Alisha testified that he then grabbed her by the neck and shoved her head down into a cabinet.  She stated that she bit him on the leg and grabbed his penis in order to make him release her.  She denied that she was holding onto his legs as he tried to walk away.  Alisha acknowledged that she followed Nick out onto the porch, but that he was yelling and screaming at her and calling her a "bar whore."  She also acknowledged that she was "continually pestering him" about who he was taking to the concert; that she had

the opportunity to just walk away; and that she was very upset because she realized that he wasn't going to choose her over the girlfriend.

{¶7} Lt. Frey testified concerning the statements that each person made at the sheriff's office. He also testified about the photographs that he took that were admitted into evidence. The photographs of Alisha showed an abrasion on her back and a slight scratch on her breast. Lt. Frey also testified that he had felt a small lump on her head where she said it had been injured. The photographs of Nick showed a bite mark on his leg. There were also photographs of the house, with various shots of the bathroom where the scuffle had occurred, along with photos showing the broken crock pot, the television, and other items in disarray.

{¶8} After hearing the evidence and taking the matter under advisement, the trial court issued a judgment entry on May 7, 2010, finding Alisha guilty. The trial court found that the State had proved all of the elements of the offense of domestic violence beyond a reasonable doubt and it further found against Alisha on the issue of self-defense.

> **The court finds that [Alisha] was the initiator of the altercation by reason of her persistent verbal aggression after her husband had retreated to the bathroom and attempted to prevent her from entering by closing the door. His attempt was unsuccessful and to repel her he pushed her back from the doorway. Defendant then fell and hit her head. She arose and re-entered the bathroom leaving her husband no place to retreat. The parties struggled. She physically attacked her husband so that he fell into the bathtub. She then left the bathroom. Her**

**husband, on arising from the bathtub, left the house, while [Alisha] remained, damaging personal property.**

(May 7, 2010 J.E.) The trial court also noted that while it "understands the factors which motivated [Alisha's] behavior, the Court finds no legal justification for it." Id.

{¶9} On July 12, 2010,[2] the trial court filed its judgment entry sentencing Alisha to 180 days in jail and a fine of $500, plus court costs. The trial court suspended 177 days of the jail sentence and half of the fine, conditioned upon Alisha following the terms of probation, including no contact with the victim. It is from this decision that Alisha appeals, raising the following two assignments of error.

### First Assignment of Error

**The trial court erred as a matter of law by finding [Alisha] guilty because such verdict was against the manifest weight of the evidence.**

### Second Assignment of Error

**The trial court erred as a matter of law by finding [Alisha] guilty because it improperly considered [Alisha's] self-defense claim.**

{¶10} In the first assignment of error, Alisha complains that the evidence did not support a finding of guilty beyond a reasonable doubt. She contends that

---

[2] The original date of sentencing was May 18, 2010, from which Alisha filed a notice of appeal on June 4, 2010. However, this court dismissed the appeal sua sponte for lack of jurisdiction because the original judgment entry of sentencing did not include the "means of conviction" and was not a final appealable order. See *State v. Kimmell* (June 5, 2010), 3d Dist. No. 16-10-03; *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163.

she was the victim of Nick's domestic violence against her and that his wrongful acts weigh against her conviction. Alisha maintains that the trial court clearly lost its way and that the judgment should be reversed and a new trial ordered.

{¶11} When an appellate court analyzes a conviction under the manifest-weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 1997-Ohio-52, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. A new trial should be granted only in the exceptional case in which the evidence weighs heavily against conviction. Id.

{¶12} Under a manifest-weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 54. Although the appellate court may act as a thirteenth juror, it should still give due deference to the findings made by the fact-finder. *State v. Thompson* (1998), 127 Ohio App.3d 511, 529, 713 N.E.2d 456.

> **The fact-finder * * * occupies a superior position in determining credibility. The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the**

**examiner, and watch the witness's reaction to exhibits and the like. Determining credibility from a sterile transcript is a Herculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder.**

Id.

{¶13} Unlike a challenge to the sufficiency of the evidence, the question of manifest weight of the evidence does not view the evidence in a light most favorable to the prosecution. *State v. Lowd*, 3d Dist. No. 5-09-16, 2010-Ohio-193, ¶17.

{¶14} The trial court found Alisha guilty of domestic violence in violation of 2919.25(A), which provides: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Physical harm means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶15} Although there were differences between Alisha's and Nick's versions of the events that morning, both testified that Nick had gone into the bathroom and attempted to close the door to keep Alisha away. Both testified that Alisha bit Nick on the back of his leg and she acknowledged that she grabbed his

penis. The photographs submitted into evidence verified that Nick had been bitten on the leg. Nick testified that both actions were very painful to him.

{¶16} After listening to and observing the demeanor of both Alisha and Nick, the trial court found that there was a greater amount of credible evidence supporting the charge of domestic violence than there was in support of Alisha's claim of self-defense. After reviewing the entire transcript and the record, we do not find that the trial court "lost its way" or committed a "manifest miscarriage of justice" in its decision.

{¶17} Given the evidence presented, the trial court acted within its prerogative to give more credence to Nick's version of the incident than to Alisha's. This Court cannot conclude that her conviction was against the manifest weight of the evidence. Alisha's first assignment of error is overruled.

{¶18} In her second assignment of error, Alisha claims that the trial court failed to properly consider that her actions were done in self-defense. She claims that she bit Nick and grabbed his penis in order to get him to release her. Alisha contends that her use of force was reasonable under the circumstances to protect herself and that the trial court erred in failing to find that her actions were justified.

{¶19} Self-defense is an affirmative defense, which means that the burden of going forward is on the defendant who must prove each element by a preponderance of the evidence. R.C. 2901.05; *State v. Densmore*, 3d Dist. No. 7-

08-04, 2009-Ohio-6870, ¶24. "[T]he elements of self-defense where the defendant is only alleged to have used non-deadly force are: (1) the defendant was not at fault in creating the situation giving rise to the affray, and (2) the defendant (even if mistaken) had a bona fide belief (which means a belief that was both objectively reasonable and subjectively honest) that he was in imminent danger of any bodily harm (whether it be deadly or non-deadly)." *State v. Williams*, 7th Dist. No. 07 MA 55, 2008-Ohio-6637, ¶15, quoting *State v. Morris*, 7th Dist. No. 03MO12, 2004-Ohio-6810, at ¶21. See, also, *State v. Densmore* at ¶26; OJI-CR 417.27.

**{¶20}** "A defendant who only used non-deadly force to defend himself need not fear death or great bodily harm in order to use non-deadly force in self-defense." *Williams* at ¶16, citing *In re Morton,* 7th Dist. No. 01 BA29, 2002-Ohio-2648, ¶23. Rather, the defense still applies if the force used was reasonable under the circumstances to protect oneself. Id. Furthermore, there is no duty to retreat before using non-deadly force in self-defense like in deadly force cases. Id., citing *Morton* at ¶25. Self-defense, however, is inappropriate if the force used is "so grossly disproportionate as to show revenge or as criminal purpose." *State v. Hendrickson*, 4th Dist. No. 08CA12, 2009-Ohio-4416, ¶33, citing *State v. Nichols*, 4th Dist. No. 01CA2775, 2002-Ohio-415. See, also, 2 OJI-CR 421.23.

{¶21} If a defendant fails to prove any one of the elements of self-defense by a preponderance of the evidence, he has failed to demonstrate that he acted in self-defense. *State v. Jackson* (1986), 22 Ohio St.3d 281, 284, 490 N.E.2d 893.

{¶22} The trial court found that Alisha initiated the altercation and the evidence in the record supported this finding. Nick had retreated to the bathroom, but Alisha persisted in following him to continue the argument. He attempted to close the door and shut her out, but she physically would not move out of the way to allow this. Later, as Nick attempted to leave the bathroom, she clung onto his leg and was dragged through the doorway, which is where she likely received the abrasion shown in the photograph. Nick then left the premises for a while, hoping to avoid the conflict, but when he returned Alisha was still there. It was at this point when Nick went to the sheriff's office to file a complaint so that he could return to his home.

{¶23} Alisha's claim of self-defense fails because the evidence supports the trial court's finding that she was at fault in creating the situation. Therefore, Alisha's second assignment of error is overruled.

{¶24} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, J., concurs.**
/jnc

**ROGERS, P.J., concurs separately.**

{¶25} I concur fully with the majority opinion; however, I write separately to emphasize two matters that apply to criminal trials.

{¶26} First, Appellant has argued that the "verdict" was against the manifest weight of the evidence. A "verdict" is rendered only after a trial by jury. Crim.R. 31. At a bench trial, the trial court renders a general finding. Crim.R. 23(C). See *State v. Fisher*, 3d Dist. No. 2-10-09, 2010-Ohio-5192, ¶15, fn. 3.

{¶27} Second, the trial court in this case issued written findings of fact. When a bench trial is held, the trial court is to make a general finding, i.e. guilty or not guilty. See Crim.R. 23(C). Accordingly, the issuing of written findings of fact is contrary to the directive contained in Crim.R. 23. See *Fisher*, 2010-Ohio-5192, at ¶12, fn. 2.