[Cite as *State v. Wagner*, 2015-Ohio-5183.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
SENECA COUNTY

STATE OF OHIO,

       PLAINTIFF-APPELLEE,               CASE NO. 13-15-18

v.

ERIC T. WAGNER,                     O P I N I O N

       DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 14-CR-0199

Judgment Affirmed

Date of Decision: December 14, 2015

APPEARANCES:

    *Jessica L. Monday* **for Appellant**

    *Brian O. Boos* **for Appellee**

**PRESTON, J.**

{¶1} Defendant-appellant, Eric T. Wagner ("Wagner"), appeals the judgment entry of sentence of the Seneca County Court of Common Pleas. Wagner argues that his conviction for domestic violence should be reversed because he proved the affirmative defense of self-defense at trial. For the reasons that follow, we affirm.

{¶2} This case stems from a July 31, 2014 altercation that took place between Wagner and his brother, Timothy Wagner ("Timothy"), at the Blue Eagle Bar in Bettsville, Ohio. On August 20, 2014, the Seneca County Grand Jury indicted Wagner on one count—domestic violence in violation of R.C. 2919.25(A), (D)(4), a third-degree felony. (Doc. No. 3).

{¶3} The case proceeded to a jury trial on March 2 and 3, 2015. (Mar. 2, 2015 Tr. at 1); (Mar. 3, 2015, Vol. I, at 1). The jury found Wagner guilty of the count of the indictment. (Mar. 3, 2015 Tr., Vol. II, at 42-43). The jury also found that Wagner "did not prove by a preponderance of the evidence the affirmative defense of self-defense." (*Id.* at 43).

{¶4} On April 16, 2015, the trial court sentenced Wagner. (Apr. 16, 2015 Tr. at 2). The trial court filed its judgment entry of sentence the next day. (Doc. No. 33).

{¶5} On May 14, 2015, Wagner filed a notice of appeal. (Doc. No. 39). He raises one assignment of error for our review.

### Assignment of Error

**The conviction of the trial court should be reversed because the conviction was against the manifest weight of the evidence and the evidence supporting it was insufficient as a matter of law to prove the conviction of Eric T. Wagner beyond a reasonable doubt because Appellant proved the affirmative defense of Self-Defense by a preponderance of the evidence.**

{¶6} In his assignment of error, Wagner argues that his conviction for domestic violence is against the manifest weight of the evidence and based on insufficient evidence because he proved the affirmative defense of self-defense at trial.

{¶7} As an initial matter, we note that Wagner's challenge to the sufficiency of the evidence as to self-defense is inappropriate. *State v. Vasquez*, 10th Dist. Franklin No. 13AP-366, 2014-Ohio-224, ¶ 52. Self-defense is an affirmative defense, and the accused bears the burden of proving it by a preponderance of the evidence. *State v. Belanger*, 190 Ohio App.3d 377, 2010-Ohio-5407, ¶ 4 (3d Dist.). *See also* R.C. 2901.05(A). "The 'due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime.'" *Vasquez* at ¶ 52, quoting *State v. Hancock*, 108 Ohio St.3d 57, 2006-

Ohio-160, ¶ 37. Therefore, we address Wagner's self-defense arguments only as to the manifest weight of the evidence. *See State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 11, citing *Vasquez* at ¶ 52.

{¶8} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

{¶9} Wagner was convicted of domestic violence in violation of R.C. 2919.25(A), (D)(4); however, he does not dispute that the State proved the

elements of that offense. Rather, Wagner argues that the jury lost its way in concluding that he did not act in self-defense. Wagner argues that the evidence at trial demonstrated that he used non-deadly force on Timothy in self-defense.

**{¶10}** In *State v. Kimmell*, this court explained the elements of self-defense where the defendant is alleged to have used non-deadly force:

> "(1) the defendant was not at fault in creating the situation giving
> rise to the affray, and (2) the defendant (even if mistaken) had a
> bona fide belief (which means a belief that was both objectively
> reasonable and subjectively honest) that he was in imminent danger
> of any bodily harm (whether it be deadly or non-deadly)."

3d Dist. Wyandot No. 16-10-06, 2011-Ohio-660, ¶ 19, quoting *Struthers v. Williams*, 7th Dist. Mahoning No. 07 MA 55, 2008-Ohio-6637, ¶ 15. *See also State v. Vielma*, 3d Dist. Paulding No. 11-11-03, 2012-Ohio-875, ¶ 37. "'A defendant who only used non-deadly force to defend himself need not fear death or great bodily harm in order to use non-deadly force in self-defense.'" *Kimmell* at ¶ 20, quoting *Williams* at ¶ 16. "Rather, the defense still applies if the force used was reasonable under the circumstances to protect oneself." *Id.*, citing *Williams* at ¶ 16. "Furthermore, there is no duty to retreat before using non-deadly force in self-defense like in deadly force cases." *Id.*, citing *Williams* at ¶ 16. "Self-defense, however, is inappropriate if the force used is 'so grossly

disproportionate as to show revenge or as criminal purpose.'" *Id.*, quoting *State v. Hendrickson*, 4th Dist. Athens No. 08CA12, 2009-Ohio-4416, ¶ 33. "If a defendant fails to prove any one of the elements of self-defense by a preponderance of the evidence, he has failed to demonstrate that he acted in self-defense." *Id.* at ¶ 21, citing *State v. Jackson*, 22 Ohio St.3d 281, 284 (1986).

{¶11} At trial, the State called Timothy, who testified that, on July 31, 2014, he learned that Wagner defaced a sign advertising Timothy's business. (Mar. 2, 2015 Tr. at 100-101). According to Timothy, he called the sheriff, and Seneca County Sheriff's Office Lieutenant Brian Hescht ("Hescht") responded, took the report about the damaged sign, and told Timothy not to go to the Blue Eagle Bar where Wagner was that evening. (*Id.* at 100, 103). Timothy testified that he told Hescht that he was nevertheless going to go to the Blue Eagle Bar "to confront [Wagner], to look him in the eye, and * * * ask him why he damaged the sign." (*Id.* at 103-104). According to Timothy, it was hot out that night, so in only a pair of shorts and flip-flops, and no shirt, he went to the Blue Eagle Bar. (*Id.* at 102). When he arrived, he went "out back" where Wagner was and "said something to [Wagner] about why he would damage the sign." (*Id.* at 104). Wagner did not respond to Timothy, but another patron who was at the bar with Wagner, Brian Cook ("Cook"), told Timothy "it had been done two days before." (*Id.* at 104-105).

{¶12} Timothy testified that Wagner "immediately walked in the bar," then Timothy "turned around and walked back in the bar." (*Id.* at 104). Wagner "was about 6 or 8 feet in front of [Timothy]." (*Id.*). Timothy testified, "[Wagner] turned to look at me to make sure where I was at, and he reached over, grabbed the pool stick off the pool table, and swung it at me with everything he had." (*Id.* at 105). According to Timothy, Wagner swung the pool stick toward Timothy's head but hit him in the elbow when Timothy raised his arm to deflect the blow. (*Id.* at 107-108). After that, Timothy "steadily hit [Wagner] with a right" fist, and "it became a struggle for the stick." (*Id.* at 108). According to Timothy, he and Wagner went to the ground and continued fighting each other. (*Id.* at 110). Timothy testified that he "really felt [his] life was in jeopardy" because Cook entered the bar and "started punching [Timothy] in the face," and Wagner "was still trying to hit [Timothy] with the pool stick from the bottom." (*Id.*). According to Timothy, before Wagner swung the pool stick at him, Timothy never made "any threats of any kind against [Wagner]," and Timothy did not run after or chase Wagner or act physically aggressive toward Wagner. (*Id.* at 105-107). As a result of the incident, Timothy was charged with domestic violence but pled guilty to disorderly conduct. (*Id.* at 118-119).

{¶13} On cross-examination, Timothy admitted that he pursued Wagner when Wagner went from the back patio into the bar but added that he did so "[c]almly." (*Id.* at 122).

{¶14} Hescht testified for the State. (*Id.* at 145). Hescht testified, "[Timothy] wanted to try to locate [Wagner] and confront him and ask him why he did the damage to the sign. I advised him that I did not suggest that, to let me make contact with him and let me speak with him about it to see if, in fact, he is the one that did that." (*Id.* at 150). According to Hescht, Timothy "got in his vehicle and he left the area" after speaking with Hescht about the sign. (*Id.*). Hescht finished his paperwork and then drove toward Bettsville because Timothy said he believed Wagner was there. (*Id.* at 151). Hescht intended to locate Wagner to inquire about the vandalized sign. (*Id.* at 151-152). Once in Bettsville, when he was two blocks from the Blue Eagle Bar, Hescht received a dispatch about an incident at the Blue Eagle Bar in which "a male * * * was assaulted by another male using a cue stick." (*Id.* at 147, 152). As he pulled up, he encountered Timothy who was walking out of the bar and was "hopping around waving his arms in the air" and "very excited, yelling." (*Id.* at 148, 152). When Timothy did not heed Hescht's directive to calm down, Hescht placed Timothy in protective custody, handcuffed in the back of Hescht's patrol vehicle. (*Id.* at 152).

{¶15} Hescht entered the bar and spoke with Wagner, who "had an odor of alcohol on his breath," exhibited slurred speech, and "was lethargic." (*Id.* at 154). Hescht radioed for an ambulance for Wagner, per Wagner's request. (*Id.*). Hescht interviewed witnesses at the bar, but none saw who started the physical altercation between Wagner and Timothy. (*Id.* at 154-156). One witness, the bartender, informed Hescht that she directed Timothy to the back patio of the bar when he came in and asked if the two men were there. (*Id.* at 155). Another witness, who was on the back patio, told Hescht that Timothy questioned Wagner about the vandalized sign, at which time Wagner walked into the bar. (*Id.* at 155-156). According to Hescht, the witness who was on the back patio "said that neither party made any threats to one another." (*Id.* at 156).

{¶16} During his investigation, Hescht observed video footage, State's Exhibit 4, from two of the bar's security cameras. (*Id.* at 158-162). Hescht explained his observations from the video:

It was [Wagner] walked in through the back door and then [Timothy] was about 10 feet behind him and walked in behind him, and then it showed [Wagner] walking up to one of the pool tables that were at the back of the bar, reached down, and picked up a cue stick, a pool stick, brought it up like this (indicating), turned, kind of

cocked it up just a little bit a split second, and then showed him like you would swing a baseball bat.

He swung it, you know, at [Timothy]. And the video showed that [Timothy] put his arm up. It looked like he was struck with his left arm. Then he grabbed the pool stick, and the two brothers started to struggle. Timothy took [Wagner] to the ground.

And once they were on the ground, you can see on the video where the bartender hears the commotion. She comes around. Two parties come from the back patio and see the commotion, and at that point, these parties try to separate the two of them.

(*Id.* at 159-160). Hescht elaborated on Wagner's and Timothy's movements when they entered the bar from the back patio:

Both of the individuals, when they walked back in, it seemed to be a normal pace, a normal walk.

There was no hurry, there was no flaring of arms. Everything seemed to be normal until they got to the pool table and grabbed the pool stick and turned around at that point.

(*Id.* at 161). According to Hescht, in the video, he did not observe Timothy "become physical" at any time with Wagner until Wagner took a "full swing" of the pool stick toward Timothy. (*Id.* at 162). Hescht testified that, in the video, he

did not observe Timothy presenting any immediate threat of physical harm to Wagner. (*Id.*).

{¶17} Wagner was released from the hospital approximately one and one-half to two hours after Hescht cleared the scene at the Blue Eagle Bar that evening. (*Id.* at 168). At that point, Hescht talked to Wagner and told him he observed the video of him striking Timothy with a pool stick:

> When I made contact with him, I advised him that I had viewed the footage of the incident that had happened at the Blue Eagle Bar and advised him that I'd observed him strike his brother, Timothy, with a pool stick.
>
> And I'd asked him if that was an accurate depiction of what I'd seen, and he stated to me yes, that he did. I asked him why he did so. And he was cooperative with me in speaking and he basically stated that he's not sure why he did.

(*Id.* at 168-169). Hescht testified that, at that time, Wagner made no assertions that Timothy threatened him verbally or physically. (*Id.* at 169). According to Hescht, "The only thing that [Wagner] stated was that his brother kept confronting him about the damage, the sign, and asking him why he did it or if he did it. He made no indication to me that there was any type of threatening." (*Id.*). At that point, Hescht arrested Wagner for domestic violence. (*Id.* at 170).

-11-

{¶18} On cross-examination, Hescht acknowledged that the case concerning the vandalized sign is still pending and has not been solved. (*Id.* at 179). According to Hescht, Wagner wanted domestic violence charges filed against Timothy "because his brother assaulted him." (*Id.* at 180-181). Wagner never told Hescht that he was in fear of Timothy. (*Id.* at 181).

{¶19} After the State rested, Wagner testified in his defense. (*Id.* at 184). He described what happened after he and Cook went to the back patio of the Blue Eagle Bar:

> Well, I just happened to turn around and look, and [Timothy] was talking to somebody. And I could tell by his demeanor, just by the way he was like this (indicating) with his fists balled up and his eyes were just as big as saucers, and he was looking at me, and I ran. The video doesn't show full time what happened.
>
> * * *
>
> I seen him and I knew I was in trouble immediately. That's why I took off. And I don't know. He was behind me because I could feel him. He was behind me. The video doesn't show him grabbing me. But I came through the door.
>
> I seen the pool stick and I grabbed it and he was right there. I was scared for my life.

(*Id.* at 185-186). Wagner testified that he "was out of there" when he saw Timothy "with his fists balled and no shirt on" because he could tell Timothy "was going to fight." (*Id.* at 188). Wagner elaborated, "I didn't want nothing to do with him. But when I knew that he was behind me, I knew that he was coming after me. I had no choice, because I was going to go down. He was going to severely hurt me." (*Id.* at 189). Wagner testified that he was "severely hurt" in the fight as a result of Timothy "beating on [him] while [he] was out cold." (*Id.*). According to Wagner, he does not remember anything "after the first hit." (*Id.* at 190).

{¶20} On cross-examination, Wagner testified that he was not intoxicated and ingested only one or two beers before Timothy arrived at the bar. (*Id.* at 193-195). According to Wagner, Timothy came lumbering onto the back patio with his arms braced, but Wagner could not recall Timothy making any verbal threats toward him at that time. (*Id.* at 194). Wagner testified that he was "running" when he entered the bar from the back patio and that the security video is "kind of slow motion, compared to what happened" and "not in real-time." (*Id.* at 195-196). Wagner conceded that the security video bears a time-stamp displaying seconds in real-time; however, Wagner stated that the video has "got kind of lapsed time." (*Id.* at 197). Wagner agreed that he chose to swing the pool stick at Timothy and that the security video did not reveal an immediate threat to Wagner,

but Wagner testified that he swung the pool stick at Timothy because Wagner felt that Timothy was going to hurt him:

[State's Counsel]: So as to the incident having occurred, you came out of the back, he followed you, as we saw in the video. I think the video's pretty clear that you deliberately stopped at the pool table, chose to pick up that pool stick, and turn around and take a swing at your brother, don't you think?

[Wagner]: Yes. But I think it was also clear that he was following me for a reason. And that was to hurt me.

* * *

[State's Counsel]: Okay. You had your back to him, correct?

[Wagner]: Yes. And I should know never to put my back to him. I should have known that.

[State's Counsel]: So you weren't so scared that you were watching him. You deliberately stopped at the pool table. Even before you pick up the cue, you look back and you hesitate, don't you?

[Wagner]: I guess, yes. He's right behind me.

[State's Counsel]: Obviously there's no immediate fear there if you stand there and wait to see what's going to happen.

[Wagner]: That's the way it looks in the video.

[State's Counsel]: Okay. And so you pick up the pool cue and you turn around and you hesitate again. You hold it above your head like this (indicating) before you take the swing, don't you?

[Wagner]: Yeah. Yes.

[State's Counsel]: So you're making a choice in that moment to take that swing, don't you?

[Wagner]: I would say. Yes.

[State's Counsel]: And what's Timothy doing at that point in time? He's just standing there, isn't he? I mean, he's not rushing at you, is he?

[Wagner]: He was.

[State's Counsel]: He's rushing at you?

[Wagner]: He was.

[State's Counsel]: He's getting down, getting ready to make a move to plow right into you?

He's standing there just watching you, isn't he?

[Wagner]:          Yeah.

* * *

[State's Counsel]: He wasn't doing anything to you.  He was just

standing there.

[Wagner]:          Yeah.

(*Id.* at 200-202, 207).   Wagner acknowledged that he did not tell Hescht, when interviewed at the hospital on the night of the incident, that he was in fear of Timothy.  (*Id.* at 205-206).  Wagner acknowledged that he has two prior domestic-violence convictions, but he at first denied having been convicted of any crime of dishonesty.  (*Id.* at 208-210).  Once the State's counsel presented him with an entry from the Tiffin Municipal Court reflecting a conviction for theft one and one-half years before, Wagner agreed that he had been convicted of a crime of dishonesty.  (*Id.* at 211-212).

{¶21} We first address the first element of self-defense—"the defendant was not at fault in creating the situation giving rise to the affray." *Kimmell*, 2011-Ohio-660, at ¶ 19.  Wagner argues that he "had no part in causing the situation, and in fact he immediately tried to leave."  (Appellant's Brief at 9).  He also argues that Timothy "went searching for [Wagner], looking for a fight," despite Hescht admonishing Timothy not to confront Wagner.  (*Id.*).  Wagner is correct

that Timothy, not he, initially created the situation giving rise to the affray.  But Wagner overlooks that the evidence demonstrated that he *escalated* the situation from a verbal confrontation to a physical altercation.

**{¶22}** Under this first element of self-defense, a defendant must "show that he was not 'at fault' in creating the situation; that is, that he had not engaged in such wrongful conduct toward his assailant that the assailant was provoked to attack the defendant."  *State v. Gillespie*, 172 Ohio App.3d 304, 2007-Ohio-3439, ¶ 17 (2d Dist.).   In this case, evidence demonstrates that Wagner engaged in wrongful conduct—namely, striking Timothy with a pool stick—that provoked Timothy to fight back.  Timothy testified that, before Wagner struck him with the pool stick, Timothy made no threats to Wagner and "walked" into the bar "about 6 to 8 feet" behind Wagner.  Hescht testified that the security video showed that Wagner and Timothy walked into the bar from the patio at a "normal pace, a normal walk."  Contrary to Wagner's dubious contention, the security video is in real-time.  (*See* State's Ex. 4).  One of the eyewitnesses, who was at the back patio, said that neither Timothy nor Wagner threatened the other.  In other words, evidence demonstrates that the skirmish was at most a verbal argument before Wagner swung the pool stick at Timothy.

**{¶23}** On the other side, Wagner testified:  that Timothy was shirtless, and his fists were balled up; that the security video did not show Timothy grabbing

him before Wagner resorted to the pool stick; and that Timothy was "rushing" at him in the bar. However, Wagner's testimony is undermined not only by that of Timothy and Hescht, but also by his own testimony. Wagner admitted on cross-examination that Timothy was "just standing there." The security video also undermines Wagner's testimony. In it, Timothy's fists are not "balled up," and he is walking into the bar several feet behind Wagner and at a pace no faster than Wagner's. (State's Ex. 4). In short, the jury had a "'superior, first-hand perspective in judging the demeanor and credibility of witnesses,'" and it understandably chose to place greater weight with Timothy's and Hescht's testimony and the security video. *State v. Suffel*, 3d Dist. Paulding No. 11-14-05, 2015-Ohio-222, ¶ 33, quoting *State v. Phillips*, 10th Dist. Franklin No. 14AP-79, 2014-Ohio-5162, ¶ 125, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Therefore, we conclude that the manifest weight of the evidence as to the first element of self-defense does not indicate that the jury clearly lost its way. *See State v. Horne*, 2d Dist. Montgomery No. 18559, 2001 WL 1345952, *3 (Nov. 2, 2001) (concluding that the jury was justified in rejecting the defendant's affirmative defense of self-defense because, as to the first element, the defendant "caused the escalation" of an existing confrontation).

{¶24} The second element of self-defense that Wagner was required to prove was: "the defendant (even if mistaken) had a bona fide belief (which means

-18-

a belief that was both objectively reasonable and subjectively honest) that he was in imminent danger of any bodily harm (whether it be deadly or non-deadly)." *Kimmell*, 2011-Ohio-660, at ¶ 19. Wagner testified that he was "scared for [his] life." However, Hescht testified, and Wagner admitted, that Wagner did not inform Hescht of this during their interview at the hospital a couple hours after the incident. In fact, Wagner told Hescht that he did not know why he struck Timothy with the pool stick. Finally, the jury observed Wagner initially deny having a conviction for a crime of dishonesty, then recant his denial when confronted with the entry proving his conviction for theft. In sum, the jury was free to conclude from this evidence that Wagner did not possess a subjectively honest belief that he was in imminent danger of bodily harm.

{¶25} The jury was also free to conclude that any subjective belief by Wagner that he was in imminent danger of bodily harm was not objectively reasonable. Wagner admitted on cross-examination that the security video did not reveal an immediate threat to Wagner and that Timothy was "just standing there." The security video reveals, as Hescht testified, that Timothy walked into the bar from the patio at a "normal pace." Timothy is not "rushing" Wagner in the security video, as Wagner testified. (State's Ex. 4). Nor are Timothy's fists clenched. (*Id.*). And while there is no audio to the security video, Timothy testified that he did not threaten Wagner, Wagner testified that he could not recall

Timothy making any verbal threats toward him when he entered the back patio, and an eyewitness on the back patio heard no threats. Therefore, we conclude that the manifest weight of the evidence as to the second element of self-defense does not indicate that the jury clearly lost its way.

{¶26} For the reasons above, Wagner failed to prove the elements of self-defense, and we cannot conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that Wagner's domestic-violence conviction must be reversed and a new trial ordered.

{¶27} Wagner's assignment of error is overruled.

{¶28} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**