[Cite as *State v. Williams*, 2019-Ohio-5381.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO.  1-19-39

    v.

KENT WILLIAMS,                    O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2018 0070

Judgment Affirmed

Date of Decision:   December 30, 2019

APPEARANCES:

    *Andrea M. Brown* for Appellant

    *Jana E. Emerick* for Appellee

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Kent D. Williams ("Williams"), appeals the May 6, 2019 judgment entry of sentence of the Allen County Common Pleas Court. For the reasons that follow, we affirm.

{¶2} This case stems from a June 17, 2017 altercation between Williams and Lindsey McCoy ("McCoy"), nka Lindsey Kramer, and Tyler Dunlap ("Dunlap") of the Ohio Department of Rehabilitation and Correction that occurred while Williams was an inmate at Allen-Oakwood Correctional Institution ("ACI"). As a result of the altercation, Williams was indicted on two counts of assault in violation of R.C. 2903.13(A), (C)(3), third-degree felonies. (Doc. No. 1.) On February 23, 2018, Williams appeared for arraignment and entered pleas of not guilty. (Doc. No. 8).

{¶3} After a bench trial on May 6, 2019, the trial court found Williams guilty of both counts in the indictment. (Doc. Nos. 82, 155); (May 6, 2019 Tr. at 64-65). On June 17, 2019, the trial court sentenced Williams to 9 months in prison on each count, respectively, and ordered the terms to be served consecutively, for an aggregate sentence of 18 months in prison. (Doc. No. 162). The trial court also ordered the prison terms to be served consecutive to a prison term imposed in another case. (*Id.*).

{¶4} Williams filed his notice of appeal on June 21, 2019. (Doc. No. 165). He raises one assignment of error for our review.

**Assignment of Error**

**The Trial Court's Guilty Verdict As To Each Count Of Assault Was Not Supported By Sufficient Evidence And Was Against The Manifest Weight Of The Evidence.**

{¶5} In his assignment of error, Williams argues that his assault convictions are based on insufficient evidence and that his convictions are against the manifest weight of the evidence. In particular, Williams argues that the trial court lost its way in evaluating the evidence to conclude that he acted in self-defense.

*Standard of Review*

{¶6} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Thus, we address each legal concept individually.

{¶7} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the

evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

{¶8} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v.*

*Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Sufficiency of the Evidence*

{¶9} We begin by addressing the sufficiency of the evidence supporting Williams's assault convictions. Williams does not dispute that the State proved the elements of assault. Rather, he argues on appeal that his assault convictions are unsupported by sufficient evidence because he presented sufficient evidence that he acted in self-defense.

{¶10} Williams's challenge to the sufficiency of the evidence as to self-defense is inappropriate. *See State v. Vasquez*, 10th Dist. Franklin No. 13AP-366, 2014-Ohio-224, ¶ 52. Self-defense is an affirmative defense, and the accused bears the burden of proving it by a preponderance of the evidence. *State v. Belanger*, 190 Ohio App.3d 377, 2010-Ohio-5407, ¶ 4 (3d Dist.), citing *State v. Williford*, 49 Ohio St.3d 247 (1990). *See also* R.C. 2901.05(A). "The 'due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime.'" *Vasquez* at ¶ 52, quoting *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 37. Therefore, we need to address Williams's self-defense arguments only in our analysis of the manifest weight of the evidence. *Id.*

*Manifest Weight of the Evidence Analysis*

{¶11} Williams was convicted of assault in violation of R.C. 2903.13(A); however, he does not dispute that the State proved the elements of that offense. Rather, Williams argues that the trial court lost its way in concluding that he did not act in self-defense. Williams argues that the evidence adduced at trial demonstrated that he used force on McCoy and Dunlap in self-defense.

{¶12} "'Self-defense is an affirmative defense, which means that the burden of going forward is on the defendant who must prove each element by a preponderance of the evidence.'"[1] *State v. Oates*, 3d Dist. Hardin No. 6-12-19, 2013-Ohio-2609, ¶ 10, quoting *State v. Kimmell*, 3d Dist. Wyandot No. 16-10-06, 2011-Ohio-660, ¶ 19, citing *State v. Densmore*, 3d Dist. Henry No. 7-08-04, 2009-Ohio-6870, ¶ 24 and R.C. 2901.05 (2008) (current version at R.C. 2901.05 (2019)). "Affirmative defenses such as self-defense '"do not seek to negate any elements of the offense which the State is required to prove" but rather they "admit[] the facts claimed by the prosecution and then rel[y] on independent facts or circumstances which the defendant claims exempt him from liability."'" *Id.* at ¶ 10,

---

[1] Subsequent to the indictment in this case, R.C. 2901.05 was amended to require the "the prosecution [to] prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be." R.C. 2901.05(B)(1) (Mar. 28, 2019). We apply the version of R.C. 2901.05 in effect at the time the defendant committed the offense. *See State v. Koch*, 2d Dist. Montgomery No. 28000, 2019-Ohio-4099, ¶ 103 (concluding that the defendant was "not entitled to retroactive application of the burden shifting changes by the legislature to Ohio's self-defense statute, R.C. 2901.05, as a result of H.B. 228"). *See also State v. Crowe*, 3d Dist. Allen No. 1-19-12, 2019-Ohio-3986, ¶ 15, fn. 1. Although the trial court applied the amended version of the statute, the result is the same.

quoting *State v. Smith*, 3d Dist. Logan No. 8-12-05, 2013-Ohio-746, ¶ 32, quoting *State v. Martin*, 21 Ohio St.3d 91, 94 (1986).

{¶13} "The elements of self-defense differ depending on whether the defendant used deadly or non-deadly force to defend himself." *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 15, citing *State v. Densmore*, 3d Dist. Henry No. 7-08-04, 2009-Ohio-6870, ¶ 25.

{¶14} To establish self-defense through the use of non-deadly force, an accused must prove: (1) the accused was not at fault in creating the situation giving rise to the affray, (2) the accused (even if mistaken) had a bona fide belief that he was in imminent danger of any bodily harm; and (3) the only means to protect himself from such danger was the use of force not likely to cause death or great bodily harm. *Accord State v. Vu*, 10th Dist. Franklin No. 09AP-606, 2010-Ohio-4019, ¶ 10; *State v. Juntunen*, 10th Dist. Franklin No. 09AP-1108, 2010-Ohio-5625, ¶ 21; *Ohio Jury Instructions*, CR Section 421.21 (Rev. Aug. 16, 2006). *See In re J.J.*, 5th Dist. Licking No. 16 CA 44, 2016-Ohio-8567, ¶ 14; *State v. Koch*, 2d Dist. Montgomery No. 28000, 2019-Ohio-4099, ¶ 62; *State. v. Jeffers*, 11th Dist. Lake No. 2007-L-011, 2008-Ohio-1894, ¶ 81. *See also State v. Wagner*, 3d Dist. Seneca No. 13-15-18, 2015-Ohio-5183, ¶ 10. "In instances where less than deadly force is used, the defendant need only show a fear of bodily harm, not of death or great bodily harm." *State v. Brown*, 2d Dist. Montgomery No. 27312, 2017-Ohio-7424,

¶ 24, citing *State v. Gee*, 2d Dist. Miami No. 87-CA-22, 1987 WL 20260, *2 (Nov.

17, 1987) and *State v. Perez*, 72 Ohio App.3d 468, 472 (10th Dist.1991).

> Both versions of self-defense, however, use the term "great bodily harm": self-defense involving deadly force uses the term to describe the level of harm the defendant must perceive before he or she is justified in using deadly force, while self-defense with non-deadly force uses the term to describe the level of force a defendant may not apply.

*Juntunen* at ¶ 23. *See Jeffers* at ¶ 68. Likewise, there is *no* duty to retreat in cases

involving non-deadly force. *Brown* at ¶ 25, citing *State v. Kucharski*, 2d Dist.

Montgomery No. 20815, 2005-Ohio-6541, ¶ 21, citing *Perez* at 472. "'[I]f there is

sufficient evidence on the issue of self-defense involving non-deadly force * * * the

trial court must instruct the jury on that defense.'" *Jeffers* at ¶ 76, quoting *State v.*

*Griffin*, 2d Dist. Montgomery No. 20681, 2005-Ohio-3698, ¶ 16, citing *State v.*

*Ervin*, 75 Ohio App.3d 275, 279 (8th Dist.1991). "If a defendant fails to prove *any*

one of the elements of self-defense by a preponderance of the evidence, he has failed

to demonstrate that he acted in self-defense." (Italics added.) *State v. Kimmel*, 3d

Dist. Wyandot No. 16-10-06, 2011-Ohio-660, ¶ 21, citing *State v. Jackson*, 22 Ohio

St.3d 281, 284 (1986).

> When the situation involves the use of force against law enforcement officers, a private citizen may not—in the absence of excessive or unnecessary force by an arresting officer—use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances.

*State v. Fritz*, 2d Dist. Montgomery No. 20796, 2005-Ohio-4736, ¶ 21, citing *State v. Scimemi*, 2d Dist. Clark No. 94-CA-58, 1995 WL 329031, ¶ 24 (June 2, 1995), *Columbus v. Fraley*, 41 Ohio St.2d 173, (1975), paragraph three of syllabus, and *State v. Wenger*, 58 Ohio St.2d 336 (1979). The standard for establishing self-defense is heightened when a police officer is the victim. *State v. Shepard*, 11th Dist. Ashtabula No. 2003-A-0028, 2006-Ohio-4315, ¶ 31, citing *State v. Grace*, 9th Dist. Summit No. 16950, 1995 WL 598502, *15 (Oct. 11, 1995).

{¶15} At trial, McCoy identified State's exhibit "1," a video recording depicting the altercation. (*Id.* at 9-10). McCoy testified that Williams was segregated in a restrictive-housing unit receiving limited privileges for rule infractions within the institution or awaiting transport to a higher security facility. (May 6, 2019 Tr. at 8). According to McCoy, inmates in that unit receive two mandatory one-hour recreation periods. (*Id.* at 10). She testified that Williams was confrontational over a disagreement with her and Dunlap regarding the allotted-recreational time—refusing to return to his cell after a recreational period. (*Id.* at 12). McCoy further testified that because Williams refused to comply with the order to return to his cell, Dunlap placed his hand on Williams's left elbow and said, "Come on, man, it doesn't have to be like that." (*Id.* at 14). As a result, according to McCoy, Williams "took an aggressive stance," and stated, "Well, if this is how it's going to be then I'm not locking down." (*Id.*). Thereafter, according to McCoy,

Williams and Dunlap exchanged punches. (*Id.* at 15). McCoy testified that she attempted to alert the control center through her "man down" device; however, it was inoperable. (*Id.* at 15). The altercation escalated and McCoy chose to assist Dunlap, rather than seek assistance. (*Id.*). McCoy testified that Williams struck her twice in the left eye, and struck Dunlap so many times that she "couldn't even count." (*Id.* at 16). On cross-examination, McCoy testified that Dunlap did not attack Williams unjustifiably. (*Id.* at 19). She also testified that the video does not show Williams's aggressive stance. (*Id.* at 25)

{¶16} Williams testified in his defense that he was "upset and told [McCoy and Dunlap he was] not locking down." (*Id.* at 34, 36, 39). However, he refuted McCoy's claim that he took an aggressive stance. (*Id.* at 36). Rather, he testified that he was tackled by all the correctional officers with Dunlap placing him in a choke hold.[2] (*Id.* at 37). Williams testified that he began hitting Dunlap with his (Dunlap's) radio in self-defense. (*Id.* at 37-38).

{¶17} Williams also presented the testimony of Kenneth Hill ("Hill") who testified that Williams refused to comply with their orders because McCoy and Dunlap ended the recreational period early. (*Id.* at 43-44). According to Hill, Williams refused to comply with their order, "Dunlap grabbed him and spun him

---

[2] Williams does not identify which correctional officers or how many correctional officers were involved in the altercation.

around and rabbit punched him about ten times." (*Id.* at 44). As a result, Williams said, "he didn't have no choice but to defend himself." (*Id.* at 45).

{¶18} Williams also presented the testimony of Richard Mort ("Mort") who testified that he "didn't really watch" the altercation between Williams and Dunlap. (*Id.* at 48). He testified that after hearing the commotion, he exited his cell, which was on the top tier of the segregation unit, and saw "a couple of fists thrown and a walkie-talkie go sliding and mace being sprayed." (*Id.* at 49). Because Mort smelled mace and "didn't want [to be] maced," he returned to his cell. (*Id.* at 48-49).

{¶19} We conclude that the trial court did not lose its way as to Williams's self-defense assertion. First, Williams must show that he was not at fault for creating the situation giving rise to the affray. Here, there is no dispute that Williams was non-compliant with the orders of McCoy and Dunlap, because Williams refused the order to return to his cell. As such, Dunlap was permitted to use "less-than-deadly force" against Williams to control the situation. *See* Ohio Adm.Code 5120-9-01(2)(a)-(d) (2004) (current version at Ohio Adm.Code 5120-9-01(2)(a)-(d) (2019)). *See also Shepard*, 2006-Ohio-4315, at ¶ 31 (concluding that the heightened standard for non-deadly force self-defense applies to correctional staff performing their duties in an institution when attempting to control an inmate). In other words, Dunlap was not the initial aggressor, and Williams was not

privileged under the circumstances to resist the correctional officers' orders. Ultimately, McCoy and Dunlap's use of less-than-deadly force was required in order to return Williams to his cell.

**{¶20}** Upon our review, we conclude that the weight of the evidence supports that Williams was at fault for creating the situation. Because the elements of self-defense are cumulative and Williams cannot establish he was not at fault for creating the situation, Williams failed to demonstrate that he acted self-defense. *Kimmel*, 2011-Ohio-660, at ¶ 21, citing *Jackson*, 22 Ohio St.3d at 284.

**{¶21}** For these reasons, we cannot conclude that that the trial court lost its way by concluding that Williams did not act in self-defense and created such a manifest miscarriage of justice that Williams's assault convictions must be reversed and a new trial ordered. Accordingly, Williams's assignment of error is overruled.

**{¶22}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**